## STATE OF NEW YORK *ex rel.* PENNSYLVANIA RAILROAD COMPANY *v.* KNIGHT.

ERROR TO THE SUPREME COURT OF THE STATE OF NEW YORK.

No. 91.   Argued December 11, 1903.—Decided January 4, 1904.

Although a railroad corporation may be largely engaged in interstate commerce it is amenable to state regulation and taxation as to any of its service which is wholly performed within the State and not as a part of interstate commerce.

A cab service maintained by the Pennsylvania Railroad Company to take passengers to and from its terminus in the city of New York, for which the charges are separate from those of other transportation and wholly for service within the State of New York is not interstate commerce, although all persons using the cabs within the company's regulations are either going to or coming from the State of New Jersey by the company's ferry; such cab service is subject to the control of the State of New York and the railroad company is not exempt, on account of being engaged in interstate commerce, from the state privilege tax of carrying on the business of running cabs for hire between points wholly within the State.

THIS is a writ of error to the Supreme Court of the State of New York to review a judgment of that court affirming the

assessment by the Comptroller of the State of New York of a certain tax against the relator, The Pennsylvania Railroad Company. The contention of the plaintiff in error is that the tax, which is a franchise tax imposed under appropriate statutes of New York upon the company for carrying on the business of running cabs and carriages for hire between points entirely within the State of New York, is invalid under the interstate commerce clause of the Constitution of the United States, article I, section 8, subdivision 3.

The facts are undisputed. In 1897 the company established a cab stand on its own premises at the Twenty-third street ferry in the city of New York, and has since maintained a service of cabs and coaches under special licenses from the city of New York, whereby they can stand on those premises only. The sole business done by those cabs and coaches is to bring the company's passengers to and from its ferry from Twenty-third street to Jersey City. The charges for this service are separate from those of the company for further transportation, and no part of its receipts from the cab service is received as compensation for any service outside the State of New York. As a separate business, this cab service has not been profitable to the company, but has been operated at a loss. The validity of this tax was sustained both by the Supreme Court and the Court of Appeals of New York. 67 App. Div. 398; 171 N. Y. 354.

*Mr. Henry Galbraith Ward*, with whom *Mr. A. Leo Everett* was on the brief for plaintiff in error:

The taxes in question being laid upon the privilege of doing business are unconstitutional if the business is interstate commerce: the tax under section 182 is a tax on the privilege of doing business. *People ex rel. Penna. R. R. Co.* v. *Wemple*, 138 N. Y. 1.

In that case, which arose before the relator established its cab business, and when it was engaged solely in taking and landing passengers and freight at the piers and ferries of New York City, the court then held that the company was exclusively

engaged in interstate commerce, and that as the tax was upon that business, it was invalid.

The same must of course be true of the tax under section 184. · The taxes cannot therefore be justified as if they were taxes upon property, or taxes upon a franchise regarded as part of the corporation's property, as in the following cases: *State Tax on Railway Gross Receipts*, 15 Wall. 284; *Delaware Railroad Tax*, 18 Wall. 206; *Telegraph Co.* v. *Texas*, 105 U. S. 460; *Western Union Tel. Co.* v. *Massachusetts*, 125 U. S. 530; *Pullman's Car Co.* v. *Pennsylvania*, 141 U. S. 18; *Maine* v. *Grand Trunk Ry.*, 142 U. S. 217; *Ficklen* v. *Shelby Co.*, 145 U. S. 1; *Ashley* v. *Ryan*, 153 U. S. 436; *Pittsburgh, etc., Ry. Co.* v. *Backus*, 154 U. S. 421; *Postal Telegraph Co.* v. *Adams*, 155 U. S. 688; *Hooper* v. *California*, 155 U. S. 648; *Erie R. R. Co.* v. *Pennsylvania*, 158 U. S. 431; *Western Union Tel. Co.* v. *Taggart*, 163 U. S. 1; *Adams Express Co.* v. *Ohio*, 165 U. S. 194; *American Refrigerating Co.* v. *Hall*, 174 U. S. 70.

Under the classification given in *Atlantic &c. Telegraph Co.* v. *Philadelphia*, 190 U. S. 106, this case is in the category of those in which the tax has been held to be upon the privilege of engaging in commerce, as *Gloucester Ferry Co.* v. *Pennsylvania*, 114 U. S. 196; *Robbins* v. *Shelby Taxing District*, 120 U. S. 489; *Fargo* v. *Michigan*, 121 U. S. 230; *Phila. S. S. Co.* v. *Pennsylvania*, 122 U. S. 326; *Leloup* v. *Port of Mobile*, 127 U. S. 640; *Asher* v. *Texas*, 128 U. S. 129; *McCall* v. *California*, 136 U. S. 104; *Crutcher* v. *Kentucky*, 141 U. S. 47.

It follows, and indeed it is admitted by the Court of Appeals, that if the cab business is interstate commerce the taxes are invalid.

In the operation of its cab service the Pennsylvania Railroad Company is wholly engaged in interstate commerce.

The court below erred in employing the test of continuous tickets purchased in another State. *Foster* v. *Davenport*, 22 How. 244; *Kelley* v. *Rhoads*, 188 U. S. 1; *Railway Co.* v. *Interstate Com. Com.*, 162 U. S. 184; *L. & N. R. R. Co.* v. *Behlmer*, 175 U. S. 648; *The Daniel Ball*, 10 Wall. 565.

The doctrine that where there is *not* a through contract there is *not* interstate commerce, is a radically different one, and was not involved in either of the cases last cited. *Munn* v. *Illinois*, 94 U. S. 113; *Coe* v. *Errol*, 116 U. S. 517; *Detroit, etc., Ry. Co.* v. *Interstate Com. Com.*, 74 Fed. Rep. 803; 167 U. S. 633, do not support the decision of the Court of Appeals. As to definition of, and what constitutes interstate commerce, see *The Daniel Ball; supra; Wabash Railway Co.* v. *Illinois*, 118 U. S. 557, 565; *Norfolk & W. Ry. Co.* v. *Pennsylvania*, 136 U. S. 114; *Rhoades* v. *Iowa*, 170 U. S. 412, 426; *Caldwell* v. *North Carolina*, 187 U. S. 622, 632; *Kelley* v. *Rhoads*, 188 U. S. 1; *Diamond Match Co.* v. *Ontonagon*, 188 U. S. 82.

These decisions show that the court does not employ any arbitrary tests or distinctions, which may be good for one case but not for another, but investigates each one upon its facts, and if the transportation is interstate commerce in point of fact (though no contract is made for through transportation) it will be protected from state interference. We see the same regard for the substance rather than form of the transaction in *Cutting* v. *Florida Ry. & Nav. Co.*, 46 Fed. Rep. 641; *Galveston, etc., Ry.* v. *Armstrong* (Tex.), 43 S. W. Rep. 614; *State* v. *Gulf, Col. & S. F. Ry. Co.* (Tex.), 44 S. W. Rep. 542.

How far the plaintiff in error would be subject to state taxation, if it did a local business in addition to carrying interstate passengers, is a different question, which ought not to embarrass the decision of this case.

The cab service of the Pennsylvania Railroad is wholly interstate, that of the New York Central is only partly interstate. As to when the business ceases to be interstate so as to come under state control for taxation, see *Brown* v. *Maryland*, 12 Wheat. 419. See also *Pullman* v. *Adams*, 189 U. S. 420, and *Osborne* v. *Florida*, 164 U. S. 650, where it is held that, if a company doing interstate business chooses to do local business as well, it cannot complain if a privilege tax be imposed on it for doing business generally.

*Mr. John Cunneen,* Attorney General of the State of New York, for defendant in error:

The cab service maintained by the Pennsylvania Railroad Company in New York city is not interstate commerce and the taxes are valid. This case falls within *Coe* v. *Errol,* 116 U. S. 517; *Brown* v. *Houston,* 114 U. S. 662; *Diamond Match Co.* v. *Ontanagon,* 188 U. S. 82.

MR. JUSTICE BREWER, after making the foregoing statement, delivered the opinion of the court.

The contention of the company is that this cab service is merely an extension and therefore a part of its interstate transportation; that it is not carrying on a cab business generally in the city of New York, but is merely furnishing the service to those who seek to take over its lines some interstate transportation, thus commencing the transportation from their houses instead of from the ferry landing, or like service to those who have already received such interstate transportation, thus completing the transportation to their places of destination; that the character of the business remains unchanged, although individuals may avail themselves of this service who do not intend or have not received any interstate transportation, for they who thus use the service do so wrongfully and against the wish of the company. In other words, the company, to promote its general business, seeks only to complete the continuous transportation of interstate passengers to or from their residences or hotels in New York city instead of commencing and ending such transportation at the ferry landing at Twenty-third street; the character of the service depends not on the action of the passenger, but on the purpose of the company in providing it, and the omission to include the charge for the cab service in the charges for other transportation arises from the practical difficulty of making such inclusion, and does not alter the fact that such cab service is a part of the interstate transportation.

To hold the even balance between the Nation and the States in the exercise of their respective powers and rights, always difficult, is becoming more so through the growing complexity of social life, and business conditions. Into many relations and transactions there enter elements of a national as well as those of a state character, and to determine in a given case which elements dominate and assign the relation or transaction to the control of the Nation or of the State, is often most perplexing. And this case fully illustrates the perplexities.

It is true that a passenger over the Pennsylvania Railroad to the city of New York does not in one sense fully complete his journey when he reaches the ferry landing on the New York side, but only when he is delivered at his temporary or permanent stopping place in the city. Looking at it from this standpoint the company's cab service is simply one element in a continuous interstate transportation, and as such would be excluded from state and be subject to national control. The State may not tax for the privilege of doing an interstate commerce business. *Atlantic & Pacific Telegraph Company v. Philadelphia*, 190 U. S. 160. On the other hand, the cab service is exclusively rendered within the limits of the city. It is contracted and paid for independently of any contract or payment for strictly interstate transportation. The party receiving it owes no legal duty of crossing the state line.

Undoubtedly, a single act of carriage or transportation wholly within a State may be part of a continuous interstate carriage or transportation. Goods shipped from Albany to Philadelphia may be carried by the New York Central Railroad only within the limits of New York, and yet that service is an interstate carriage. By reason thereof the Nation regulates that carriage, including the part performed by the New York company. But it does not follow therefrom that the New York company is wholly relieved from state regulation and state taxation, for a part of its work is carriage and transportation begun and ended within the State. So the Pennsylvania company, which is engaged largely in interstate

transportation, is amenable to state regulation and state taxation as to any of its service, which is wholly performed within the State and not as a part of interstate transportation. Wherever a separation in fact exists between transportation service wholly within the State and that between the States a like separation may be recognized between the control of the State and that of the Nation. *Osborne* v. *Florida,* 164 U. S. 650; *Pullman Co.* v. *Adams,* 189 U. S. 420.

As we have seen, the cab service is rendered wholly within the State and has no contractual or necessary relation to interstate transportation. It is either preliminary or subsequent thereto. It is independently contracted for, and not necessarily connected therewith. But when service is wholly within a State, it is presumably subject to state control. The burden is on him who asserts that, though actually within, it is legally outside the State; and unless the interstate character is established, locality determines the question of jurisdiction. *Coe* v. *Errol,* 116 U. S. 517, though not in all respects similar, is very closely in point. In that case spruce logs had been drawn down from Wentworth's Location in New Hampshire, and placed in Clear Stream, also in New Hampshire, to be from thence floated down the Androscoggin River to the State of Maine, there to be manufactured and sold. After they had thus been drawn down and placed in Clear Stream, a tax was imposed upon them by the State of New Hampshire. The validity of that tax was challenged on the ground that the logs were in process of transportation from Wentworth's Location in New Hampshire to the State of Maine. It was sustained by the Supreme Court of New Hampshire, and also by this court. In the course of the opinion Mr. Justice Bradley made these pertinent observations (p. 528):

"It is true, it was said in the case of *The Daniel Ball,* 10 Wall. 557, 565: 'Whenever a commodity has begun to move as an article of trade from one State to another, commerce in that commodity between the States has commenced.' But this movement does not begin until the articles have been

shipped or started for transportation from the one State to the other. The carrying of them in carts or other vehicles, or even floating them, to the depot where the journey is to commence is no part of that journey. That is all preliminary work, performed for the purpose of putting the property in a state of preparation and readiness for transportation. Until actually launched on its way to another State, or committed to a common carrier for transportation to such State, its destination is not fixed and certain. It may be sold or otherwise disposed of within the State, and never put in course of transportation out of the State. Carrying it from the farm, or the forest, to the depot, is only an interior movement of the property, entirely within the State, for the purpose, it is true, but only for the purpose, of putting it into a course of exportation; it is no part of the exportation itself. Until shipped or started on its final journey out of the State its exportation is a matter altogether *in fieri*, and not at all a fixed and certain thing." *Diamond Match Company* v. *Ontonagon,* 188 U. S. 82; *Detroit &c. Railway Company* v. *Interstate Commerce Commission,* 21 C. C. A. 103; 43 U. S. App. 308; *Interstate Commerce Commission* v. *Detroit &c. Railway Company,* 167 U. S. 633.

As shown in the opinion from which we have just quoted, many things have more or less close relation to interstate commerce, which are not properly to be regarded as a part of it. If the cab which carries the passengers from the hotel to the ferry landing is engaged in interstate transportation, why is not the porter who carries the traveler's trunk from his room to the carriage also so engaged? If the cab service is interstate transportation, are the drivers of the cabs and the dealers who supply hay and grain for the horses also engaged in interstate commerce? And where will the limit be placed?

We are of opinion that the cab service is an independent local service, preliminary or subsequent to any interstate transportation, and therefore the judgment of the Supreme Court of the State of New York was correct, and it is

*Affirmed.*