## Frank J. Luken, Appellee, v. The Lake Shore & Michigan Southern Railway Company, Appellant.

### Gen. No. 15,047.

1. SAFETY APPLIANCE ACT—*how construed.* The State statute providing for the use of automatic couplers being virtually an adoption of the Federal law then in force on that subject, it will be assumed that the law-making power in ingrafting such Federal statute into the law of the State had in mind the decision of the courts in construing the Federal statute, and in faith of such decisions adopted the statute with intent to make the same effective in the manner and to the extent of legal construction theretofore made by the courts, so far as applicable to intrastate railroad traffic.

2. SAFETY APPLIANCE ACT—*what violation of.* The use of a car without a coupler which will couple by impact without the necessity of going between the end of the cars, is unlawful. "A car with an automatic coupler that will not work is, to all intents and purposes, a car without an automatic coupler."

3. SAFETY APPLIANCE ACT—*gist of action predicated upon.* The gist of such an action is the hauling of a car with couplers in such a condition that they cannot be coupled or uncoupled without the necessity of going between the cars to do such work.

4. SAFETY APPLIANCE ACT—*what not defenses in action predicated upon.* In such an action neither the defense of assumed risk nor that of contributory negligence will preclude a recovery.

5. PRACTICE—*when election between counts erroneously required.* *Held,* that it was error to require the plaintiff to elect whether he would proceed to the jury under a count charging violation of the Federal Safety Appliance Act or under another count charging a violation of a like act existing in this State.

6. AMENDMENTS AND JEOFAILS—*when count may be reinstated after verdict.* If the court at a trial has improperly required an election between several distinct counts, such error may be cured by permitting after verdict the reinstatement of the count as to which the case did not go to the jury by virtue of such enforced election.

7. APPEALS AND ERRORS—*of what complaint cannot be made.* If counsel has induced the court to commit error he cannot thereafter complain of the action of the court in correcting such error.

Action in case for personal injuries. Appeal from the Superior Court of Cook county; the Hon. WILLARD M. McEWEN, Judge presiding. Heard in this court at the October term, 1908. Affirmed. Opinion filed April 18, 1910.

GLENNON, CARY, WALKER & HOWE, for appellant.

JAMES C. MCSHANE, for appellee.

MR. PRESIDING JUSTICE HOLDOM delivered the opinion of the court.

This action was brought to recover damages for personal injuries sustained by plaintiff while in the employ of defendant as a switchman, he having been injured while attempting to couple up two cars in the yards of defendant at Manor Park, Chicago, provided with automatic couplers, one of which was out of repair, and would not perform its function of coupling automatically by impact without the necessity of the switchman going between the ends of the cars. The declaration consisted of two counts, each stating in apt language sufficient facts, preceded by formal inducement, entitling plaintiff to recover, if supplemented by adequate proof. The first count rested the right of recovery in virtue of a certain State statute, and the second count in like manner under the provisions of a Federal statute. The general issue was pleaded to each count and the cause, upon issues thus joined, went to trial before court and jury, resulting in a verdict in favor of plaintiff with damages assessed at $10,000, upon which judgment was entered after denying motions of defendant for a new trial and in arrest of judgment. Defendant appeals and assigns error and argues as causes for reversal failure of the trial judge to instruct a verdict in its favor at the several times when moved so to do; refusal to give instructions 12 to 17 asked by defendant; in vacating an order requiring plaintiff to elect under which count of the declaration the cause should be submitted to the jury; in overruling defendant's motions for a new trial and in arrest of judgment, and in entering judgment upon the verdict, and that the damages are excessive. There is but little appreciative difference and none on principle between the Federal and State

statutes. The Federal statute was passed in 1893 and amended in 1896 and again in 1903; and the State statute was passed in 1905. The State statute being virtually an adoption of the Federal law then in force on that subject, it will be assumed that the law-making power in ingrafting such Federal statute into the law of the State had in mind the decisions of the courts in construing the Federal statute, and in faith of such decisions adopted the statute with intent to make the same effective in the manner and to the extent of legal construction theretofore made by the courts, so far as applicable to intrastate railroad traffic. We quote both sections of the respective Acts, which are more particularly involved in this cause.

Section 2 of the Federal Act of 1893 reads: "That on or after the first day of January, 1898, it shall be unlawful for any such common carrier to haul or permit to be hauled or used on its line any car used in moving interstate traffic not equipped with couplers coupling automatically by impact, and which can be uncoupled without the necessity of men going between the ends of the cars." While section 2 of the Illinois Act provides "That from and after the passages of this Act it shall be unlawful for any common carrier to haul or permit to be hauled or used on its line any locomotive, tender, car or similar vehicle, used in moving State traffic, not equipped with couplers coupling automatically by impact, and which can be coupled without the necessity of men going between the ends of the cars." Having in mind the construction put upon the Federal Act by the courts in construing the kind of rolling stock to which it applies, the two Acts are, in the effect to be given to them, virtually identical. Johnson v. So. Pacific Ry. Co., 196 U. S. 1.

Section 8 of the Federal Act provides that "any employe of any such common carrier who may be injured by any locomotive, car or train in use contrary to the provisions of this Act shall not be deemed

thereby to have assumed the risk thereby occasioned, although continuing in the employ of such carrier after the unlawful use of such locomotive, car or train had been brought to his knowledge." Corresponding to this is section 9 of the Illinois statute, which reads: "Any employe of any such common carrier who may be injured by any train, tender, car or similar vehicle in use contrary to the provisions of this Act, shall not be deemed to have assumed the risk thereby occasioned, nor to have been guilty of contributory negligence, because of continuing in the employment of such common carrier or in the performance of his duties as such employe after the unlawful use of such train, locomotive, tender, car or similar vehicle has been brought to his knowledge."

The duty of defendant, whether imposed by the Federal or State statutes, was not to haul or permit to be hauled or used any locomotive, car, etc., not equipped with couplers coupling automatically by impact, and which can be uncoupled without the necessity of going between the ends of the cars. Plaintiff was a switchman in the employ of defendant. He was injured in consequence of the violation by defendant of either the Federal or State Act, whichever is applicable. The injury resulted from the coupler on the car, which plaintiff was endeavoring to "couple up" with another car, being out of repair, making it necessary for him to go between the cars in an effort to remedy the difficulty and make the coupling. That the coupler was out of repair is undisputed. We think a *prima facie* case was made when plaintiff had proven that the coupling was defective and that he could not therefore couple the cars without going between them because of such defect, and that he was injured as a result of the defendant's hauling and using a car which would not couple automatically by impact. At least such proof was sufficient to require defendant to rebut it if it could. The use of a car without a coupler which would couple by impact with-

out the necessity of going between the ends of the cars was unlawful. Whatever view may be taken of the condition of the coupler, we are inclined to hold to the rule laid down in Taggart v. Republic, 141 Fed. R. 910, that "A car with an automatic coupler that will not work is, to all intents and purposes, a car without an automatic coupler." Such a car was the one causing the injury to plaintiff. C. & A. R. Co. v. Walters, 217 Ill. 91. We concur with the argument of counsel for plaintiff that the gist of the action is the hauling of the car with couplers in such a condition that they cannot be coupled and uncoupled without the necessity of going between the cars to do such work. The reason for the condition being immaterial. Johnson v. So. Pac. Ry. Co., 196 U. S. 1. As truly said in the Johnson case: "The risk in coupling and uncoupling was the evil sought to be remedied and that risk was to be obviated by the use of couplers actually coupling automatically. In the present case the couplings would not work together; Johnson was obliged to go between the cars; and the law was not complied with." If in the place of Johnson's name Luken's be used, we have a complete statement of plaintiff's condition and defendant's liability. These statutes make the risk that of the common carrier, and both statutes in effect abolish the common law doctrine of the assumption of risk and contributory negligence in cases where the statutes may be invoked. St. L. I. M. & S. Ry. Co. v. Taylor, 210 U. S. 281. In the Taylor case the court say: "The obvious purpose of the legislature was to supplant the qualified duty of the common law with an absolute duty deemed by it more just. If the railroad does in point of fact use cars which do not comply with the standard, it violates the plain prohibitions of the law, and there arises from that violation the liability to make that compensation to one who is injured by it. It is urged that this is a harsh construction. To this we reply that if it be the true construction its harshness is no concern of the courts."

The duty of the common carrier under the statutes *supra* is absolute as appears from U. S. v. A. T. & S. F. Ry. Co., 163 Fed. R. 517, reversing a judgment in favor of the railroad company, in which case the court say: "But as we read the opinion of the Supreme Court in the more recent case of St. Louis, Iron Mountain and Southern Ry. Co. v. Taylor, 210 U. S. 281, it is now authoritatively settled that the duty of the railway company in circumstances where the Congressional law is applicable is not that of exercising reasonable care in maintaining the prescribed safety appliances in operative condition, but is absolute. In that case the common law rules in respect to the exercising of reasonable care by the master, and of the non-liability of the master for the negligence of a fellow servant were invoked by the railway company and were held by the court to be superseded by the statute." In logic and sound reasoning the rule of the Taylor case is the law of this, whether it rests for its foundation upon the Federal or State statute *supra*. The beneficent purposes of the Acts are neither to be minimized nor nullified through judicial interpretation. Their spirit controls judicial interpretation, for, as said in U. S. v. So. Ry. Co., 135 Fed. R. 122, "The Act is so highly meritorious, so generous in its purpose, so in harmony with the best sentiment of a humane people and a progressive government, that it appeals strongly to the courts for its prompt and vigorous enforcement." We are satisfied that the evidence is ample to sustain the verdict under either count of the declaration, provided the condition of the pleadings does not render that verdict abortive and necessitate a new trial.

Defendant moved the court at the conclusion of all the proofs for an order compelling plaintiff to elect under which count the case should go to the jury. Plaintiff protested that he had a right to have the cause submitted to the jury on both counts, but such protest was unavailing, the motion of defendant pre-

vailed and under the ruling of the court and against the protest and exception of counsel for plaintiff he elected to proceed under the "State count", being the first. On motion of plaintiff after verdict, the court vacated the order of election and gave judgment on the verdict. Plaintiff assigns cross errors on the action of the court in granting defendant's motion and in instructing the jury to find for defendant under the second count. To solve the entanglements thus created, three questions seem to be presented for our decision: First: Did the court err in allowing defendant's motion and requiring plaintiff to elect on which count he would submit the case to the jury? Second: The effect of vacating the order. Third: If the order of election was erroneous, can defendant avail of such error to its advantage?

If in the circumstances of the case counsel was of the opinion that there was some doubt as to whether the liability of defendant rested in virtue of the Federal or State statute, and he was uncertain under which statute the evidence would develop the liability rested, then the plaintiff had the right to file distinct counts charging the liability of defendant separately under both statutes. He had a right to have the case go to the jury under both counts, and he could not be compelled by the court to elect between the counts and to proceed under one of them. Utter v. Buck, 120 Ill. App. 120. The order requiring plaintiff to elect between the two counts was erroneous. Bright v. Kenefick, 69 ib. 43.

Second: As we read the record the second count, even after the forced election to proceed under the first, was never stricken out or *nolled,* but still remained in the record. Under our statute amendments may be made at any time before judgment, so that the pleadings and proofs may harmonize. While we are of the opinion that the case must be regarded as having gone to the jury with both counts in the declaration, still if it were not so, the election order being vacated after

verdict and before judgment, reinstated the second count, which was effective to cure any variance which may have existed between the pleadings and proofs without such second count. Haley v. Kirkpatrick, 44 C. C. A. 104.

Third: It is a theory, sometimes lacking in practice, that the functions of counsel are to enlighten the court, so that justice in the trial of causes may be attained. While it may not be said that counsel in inducing the trial judge to fall into error in requiring an election between the two counts of the declaration was guilty of any "wrong doing", still we do not think he can be heard to complain of the curing of the error brought about, innocently though it may have been, by counsel's own action, where the merits of the cause are in no way affected to the disadvantage of defendant. As said in U. P. Ry. Co. v. Harris, 12 C. C. A. 602: "The defendant will not be allowed to thus take advantage of the errors of the court induced on his own motion and then compel the plaintiff to suffer the consequences. If the rule were otherwise it would encourage and reward unfounded and groundless objections." Jobbins v. Gray, 34 Ill. App. 219; Stearns v. Reidy, 33 ib. 249. We think the case stands as if the order of election had not been made and the case had gone to the jury on both counts. Nowhere does defendant contend that the order of election was without error.

We think that, as the evidence stands, a verdict limited to a consideration of the first count can be sustained. The car in question was within this State, being hauled by defendant in violation of the State statute as to couplings. There is no countervailing proof challenging its intrastate character. The proof uncontradicted made a *prima facie* case of intrastate use, sufficient at least to shift the burden to defendant to rebut by proof assumedly accessible to it. For the evidence in the record proves only one fact in relation to this car, and that is that it was hauled by defendant

in this State, and if it was at any time beyond the limits of this State or being used in interstate traffic, there is no proof of that fact, nor that it was a part of any train engaged in interstate transportation. N. Y. ex rel. v. Knight, 192 U. S. 27, where it is said: "Where service is wholly within a State it is presumably subject to State control. The burden is on him who asserts that though actually within, it is legally outside, the State; and unless the inter State character is established, locality determines the question of jurisdiction." Gulf etc. v. State, 204 U. S. 403; I. C. R. R. Co. v. Bailey, 222 Ill. 484. It did not *ipso facto* follow that because defendant railroad operated lines in more than one State, the car in question at the time in question being hauled upon the line of defendant in this State was engaged in interstate commerce. The Federal Act in this respect has not been subject to any narrow construction by the courts. As an illustration of this fact the court held in Wabash R. Co. & Elgin, J. & E. Ry. Co. v. U. S., 168 Fed. R. 1, quoting from the syllabi, "If a car is set apart for carrying intrastate traffic exclusively, but if it is not confined to intrastate trains on an intrastate line, the fact that while it is laden with intrastate traffic it is hauled in connection with interstate cars on an interstate line requires it to be equipped with automatic couplers in compliance with the federal safety appliance Acts".

The duty imposed by both the federal and State Acts is the same. The issues, aside from the question of whether the car was engaged in intra or interstate traffic were identical under each count. The verdict of the jury is maintainable under either or both, so that the ultimate merits nor the liability of defendant were injuriously affected by the court's instructing a verdict on the second count. The doctrine of assumed risk and contributory negligence is eliminated as factors in any case coming within either statute. Schlemmer v. Ry. Co., 205 U. S. 1, in which the court say: "We are clearly of opinion that Schlemmer's rights

were in no way impaired by his getting between the rails and attempting to couple the cars. So far he was saved by the provision that he did not assume the risk."

We think the jury were sufficiently instructed upon the law of the case in every essential particular by the instructions given them, and more favorably for defendant than necessary; and that the refusal of the instructions complained about did not tend to impair any right which defendant could avail of. They were rightfully refused because they ignored the elimination of the doctrine of assumed risk and contributory negligence and assumed that these doctrines of the common law were invokable in defense of defendant's liability.

The trial court erred in requiring plaintiff to elect under which count he would submit the cause to the jury, and in instructing the jury to find for defendant under the second count. These errors, however, are not prejudicial to defendant, but of its own creation. In all other respects we find no error justifying a reversal of the judgment of the Superior Court, and it is therefore affirmed.

*Affirmed.*