GIORGIO BORELLI, as Administrator of the Estate of GEORGIO BORENZI, Deceased, Respondent, *v.* INTERNATIONAL RAILWAY COMPANY, Appellant.

**Railroads — master and servant — Federal Employers' Liability Act — to recover thereunder master must be common carrier by railroad engaged in interstate commerce and servant at time of accident must be employed in said commerce — railway company, in operating wholly urban line, though connected by switch with interurban line connecting with another railway running to foreign country, not a " common carrier by railroad " within meaning of statute — local cars not rendered instrumentality of foreign commerce by occasional carriage of passenger bound for foreign country — employee killed while repairing track of urban line not engaged in foreign commerce because such a passenger occasionally rides upon one of its cars.**

1. Under the Federal Employers' Liability Act (U. S. Comp. Stat. § 8657 *et seq.*), giving a remedy to the personal representatives of an employee of a common carrier by railroad engaged in interstate commerce, killed while employed in such commerce by the negligence of his master, three conditions precedent must appear before the plaintiff may recover. The master must be a common carrier by railroad; he must be engaged in interstate commerce, and the servant at the time of the accident must be likewise so employed.

2. The International Railway Company, which owns all the street railways in the city of Buffalo and also an interurban line running through a street of that city and thence to Niagara Falls, where it has a connecting line running to cities in Canada, in its operation of one of its lines in the city of Buffalo, the tracks of which are physically connected with the interurban line by a switch, but none of the cars of which run beyond said intersection, is not " a common carrier by railroad " within the meaning of the Federal Employers' Liability

Act. A purely urban line does not come within the description of the statute.

3. Nor is said railway company, in transporting a passenger intending to go to Canada over said line in one of its cars, necessarily engaged in foreign commerce. The fact that it utilizes to some extent said local line for 'Canadian traffic and that passengers coming from or going to Canada, by obtaining a transfer or a through ticket may ride over said line, is not sufficient of itself to render the local car in which they ride an instrumentality of foreign commerce. The mere fact that there is some connection with interstate commerce is not enough, the question being, what is the substantial business of the road. It is a question of degree and unless the foreign character is established locality determines the question. (*Cott* v. *Erie R. R. Co.*, 231 N. Y. 67, distinguished.)

4. Plaintiff's intestate, who was killed while repairing the track of said urban line, was not at the time engaged in foreign commerce. A track repairer is not so engaged unless the railroad itself is an instrumentality thereof, and, because a passeger, intending to go to Canada, occasionally boards one of its cars, the railroad, obviously built for other purposes and obviously substantially used for them, does not itself become forever afterward an instrumentality of such commerce.

*Borelli* v. *International Railway Co.*, 208 App. Div. 514, reversed.

(Argued February 2, 1925; decided March 3, 1925.)

APPEAL from an order of the Appellate Division of the Supreme Court in the fourth judicial department, entered March 15, 1924, reversing a judgment in favor of defendant entered upon a dismissal of the complaint by the court at a Trial Term and granting a new trial.

*Olin T. Nye* for appellant. The right of recovery under the Federal Employers' Liability Act of 1908 arises only where the injury is suffered when the carrier is engaged in interstate commerce and while the employee is employed by the carrier in such commerce. (*Pederson* v. *D., L. & W. R. R. Co.*, 229 U. S. 146; *Shanks* v. *D., L. & W. R. R. Co.*, 239 U. S. 556; *Buynofsky* v. *L. V. R. R. Co.*, 228 N. Y. 249; *Giovio* v. *N. Y. C. R. R. Co.*, 176 App. Div. 230; *Liberti* v. *Staten Island Railway Co.*, 180 App. Div. 90; 223 N. Y. 682; *Industrial Accident Commission of California* v. *Davis*, 259 U. S. 182; *Tepper*

v. *New York, N. H. & H. R. R. Co.*, 238 N. Y. 423.)
The plaintiff's intestate was not engaged in an act or
instrumentality of interstate commerce at the time that
the injury was suffered, nor was he employed at such
time by the carrier in interstate commerce. (*Illinois
Central R. R. Co.* v. *Behrens*, 233 U. S. 473; *Reynolds*
v. *P. & R. Co.*, 266 Penn. St. 400; *Perez* v. *U. P. R.
Co.*, 173 Pac. Rep. 236; *Watts* v. *O. V. El. Co.*, 78 W.
Va. 144; *Kiser* v. *Ry. Co.*, 188 Mo. App. 169.)

*Charles Oishei* for respondent. The defendant was
engaged in interstate commerce at the time that decedent
received the injuries resulting in his death. (*W. R. &
El. Co.* v. *Scarla*, 244 U. S. 638.) Connecting railroads
passing through two States, or from one State to a foreign
nation, are engaged in interstate commerce. (*Chicago, K.
& S. R. Co.* v. *Kindelstarker*, 234 Fed. Rep. 3; *United
States* v. *Union Stock Yards*, 226 U. S. 286; *P. R. Ry.
Co.* v. *Polk*, 265 U. S. 334.) Minor details of work
connected with transportation from State to State con-
stitutes interstate commerce. (*Kinzele* v. *C., M. & St.
P. R. R. Co.*, 250 U. S. 133; *S. P. R. R. Co.* v. *Industrial
Comm.*, 259 U. S. 363; *P. R. Ry. Co.* v. *Polk*, 256 U. S.
334.) The employment of the plaintiff's intestate related
to putting in repair the railway of the defendant, a
permanent instrumentality of interstate commerce. (*P.
D. & W. R. Co.* v. *McConnell*, 228 Fed. Rep. 265; *C. &
T. P. R. Co.* v. *Hall*, 234 Fed. Rep. 5; *Boyle* v. *P. R. R.
Co.*, 228 Fed. Rep. 269.) Repairs for the roadbed for
the defendant was work in interstate commerce. (*Tralichi*
v. *P. M. & S. T. P. R. R.*, 17 Fed. Rep. 677; *Dikas*
v. *O. R. R. Nav. Co.*, 179 Fed. Rep. 898.)

ANDREWS, J. The International Railway Company,
apparently through merger or otherwise, owns all the
street railways in the city of Buffalo. It also has an
interurban line running through Main street and thence

to Niagara Falls, N. Y. Here it has a connecting line crossing the Niagara river by bridge and running through Ontario to Queenstown. One of these urban street railways is known as the Ferry street line. Its tracks reach the Niagara Falls line at Court street where the rails of the two lines are physically connected by a switch, but no Ferry street car goes further. The passenger who wishes to continue his journey must alight and transfer to the car on Main street. The only witness who describes what actually occurs says that on paying his local fare on Ferry street the passenger receives a transfer ticket enabling him to ride over intersecting urban roads and also over the Niagara Falls road to the city line. At Court street he enters the station and buys a round-trip coupon ticket to Queenstown. He pays only for so much of the outward trip as is not within the city. This distance is represented by his transfer. Riding to Niagara Falls he there is transferred again to a bridge car and continues to Queenstown. On his return the process is reversed. When he uses the coupon on this return ticket " Buffalo City Line to Buffalo " he may demand a transfer, get on the Ferry street car, or on the car of any other intersecting line, and so reach his starting point. The coupon tickets that are before us indicate that this is not the only process. They may be bought in advance. When this is done the lower coupon is good for any urban line in Buffalo and the remaining coupons together with the transfer ticket carry the passenger to the end of his route. While this is possible it does not appear whether it is actually done frequently or infrequently.

It is claimed that the plaintiff's intestate was killed because of the negligence of the defendant while he was repairing the track of the Ferry street line. This action was brought for the resulting damages under the Federal Employers' Liability Act (U. S. Compiled Statutes, 1916, sec. 8657, etc.), which gives a remedy to the personal

representatives of an employee of a common carrier by railroad engaged in interstate commerce killed while employed in such commerce by the negligence of his master. Unless entitled to bring such an action the remedy of the next of kin of the deceased should be sought under our Workmen's Compensation Law. Three conditions precedent, therefore, must appear before the plaintiff may recover. The master must be a common carrier by railroad; he must be engaged in interstate commerce, and the servant at the time of the accident must be likewise so employed. None of these conditions exist in the case before us.

In discussing the questions involved we regard the fact that the defendant owned both the Ferry street and the Niagara Falls lines as immaterial, except in so far as it may tend to qualify the methods adopted in the operation of the roads or to indicate the possibility that these methods show an attempt to evade the statute. The fact that a railroad operates one line engaged in interstate commerce does not result in the conclusion that all other lines owned by it are so engaged. They may be used as separate and independent units. If that be so here, there is no more connection between the two lines than if they were owned by two corporations which had between themselves some transfer and accounting system. It is not what business the defendant may have elsewhere but what it does on Ferry street that is important.

Is the defendant a common carrier by railroad within the meaning of the act? The words used in section 8657 are similar to those used in section 8563: " any common carrier engaged in the transportation of passengers * * * wholly by railroad " from one State to another, found in the act creating and defining the powers of the Interstate Commerce Commission. Yet it has been held that while the motive power used is immaterial, while an interstate interurban line comes within this description, a purely urban line does not. (*Omaha*

*Street Ry.* v. *Interstate Commerce Commission*, 230 U. S. 324; *United States* v. *Village of Hubbard*, 266 U. S. 474.) They are " not guilty of the mischief sought to be corrected." So here. Viewing as a whole the various acts dealing with interstate carriers and their employees it will be seen that Congress had in mind steam and interurban electric roads. It is true that in an action similar to this in commenting on a like contention it was said that the *Omaha* case is of negligible value in determining the construction of the Federal Employers' Liability Act (*Washington* v. *Scala*, 244 U. S. 630). The statement was a dictum, for Scala was injured on what was clearly an interurban road to which under the decisions the act as clearly applied and none of the cases cited have any bearing on the question before us. Other courts have construed the two acts together. (*United States* v. *Geddes*, 180 Fed. Rep. 480; 65 C. C. A. 320.) And in *Kansas City Ry. Co.* v. *McAdow*, (240 U. S. 51), an action under the same liability act, the distinction made in the *Omaha* case is referred to without disapproval and it is intimated that if the road had been an urban one the act would have had no application. The Safety Appliance Act, section 8605, also speaks of " any common carrier engaged in interstate commerce by railroad." Never so far as we can find has this act been applied to urban street railroads, although it has to interurban lines. (*Spokane & Inland Empire R. R. Co.* v. *United States*, 241 U. S. 344.) In 1903 this act was amended to exclude expressly cars used on street railways but we are of the opinion that this amendment in this respect was declaratory and in effect construed and applied the original statute (*Johnson* v. *Southern Pacific Co.*, 196 U. S. 1, 21) for the amendment was intended to enlarge not to restrict the scope of the act. (*Spokane & I. E. R. R. Co.* v. *Campbell*, 241 U. S. 497, 506.) The Arbitration Act (section 8666) contains similar language as does the Hours of Service Act (section 8677). Neither have so far been held to affect street railroads, although the one statute expressly excepts

them and the other does not. Some weight also may be given to the consideration that certain of the acts quoted impose a penalty for disobedience to their rules. They should not be given an undue extension although they are not to be construed so strictly as to defeat the obvious intent of Congress. Our conclusion is that the defendant in operating the Ferry street line is not " a common carrier by railroad."

Assuming the contrary, however, is it engaged in foreign commerce? It does utilize to some extent its local lines for Canadian traffic. Passengers returning from Queenstown by obtaining a transfer when the Buffalo coupon is collected, may certainly ride over it to reach their ultimate destination. So passengers, possessing a through ticket, boarding a local car and surrendering the same coupon, may obtain a transfer which will carry them to the Buffalo line, on their way to Canada. But this is an incidental matter. It is not sufficient of itself to render the local car in which they ride an instrumentality of foreign commerce. The break of the journey at Court street is not decisive. A railroad whose real business is foreign may not so avoid the statute. But it is to be considered in relation to the other evidence before us. The mere fact that there is some connection, however remote, with interstate commerce is not enough. What is the substantial business of the road? Does the transportation to and from Canada in truth begin and end at the Niagara Falls line, as its system of tickets and transfers might indicate? Is that part of the journey in effect a separate transaction? Remembering, as the Supreme Court has said in another connection, that the statute speaks of interstate commerce not in a technical but in a practical sense (*Shanks* v. *D., L. & W. R. R. Co.,* 239 U. S. 556; *Chicago, B. & Q. R. R. Co.* v. *Harrington,* 241 U. S. 177), is not this transaction analogous to carrying passengers to the initial carrier, whether done by the latter only or by a stranger? " Wherever a separation

in fact exists between transportation service wholly within the state and that between the states a like separation may be recognized between control of the state and that of the nation." (*State of New York ex rel. Pennsylvania R. R. Co.* v. *Knight*, 192 U. S. 21.) Difficult as it is to draw the line, we must place on one side those operations that are in effect of local interest. Such they originally were on the Ferry street line built and operated as an urban road. Such they continue as is at least indicated by the interruption of the trip at Court street. It is a question of degree and unless the foreign character is established by the plaintiff, " locality determines the question of jurisdiction." (*State of New York ex rel. Pennsylvania R. R. Co.* v. *Knight*, 192 U. S. 21.) The mere fact that a through ticket may now and then be presented to a Ferry street conductor is not enough. We must be controlled by our practical judgment of the whole situation. *Cott* v. *Erie R. R. Co.* (231 N. Y. 67) is not inconsistent with our conclusion. There an employee on cars intended for Canada, to be delivered to a carrier having an interstate road, and running over tracks devoted to interstate traffic, whose very purpose was to carry freight from one road to another that the journey might be continued, was injured. Under these circumstances we said that notwithstanding the carrier's ignorance of the ultimate destination of the freight it was engaged in interstate commerce. Similar cases in the U. S. Supreme Court are *Texas & N. O. R. R. Co.* v. *Sabine Tram Co.* (227 U. S. 111) and *Ohio R. R. Commission* v. *Worthington* (225 U. S. 101). We hold that in transporting a passenger intending to go to Canada, over the Ferry street line in one of its cars under the circumstances here disclosed, the defendant was not engaged in foreign commerce.

Again assuming, however, that the defendant as to this Ferry street line is a common carrier by railroad and as to any particular car carrying a Queenstown passenger

is engaged in foreign commerce and that the conductor of that particular car is also so engaged, still the plaintiff's intestate was not, while he was repairing the track of that line. Concededly if the railroad as a whole has become an instrumentality of foreign commerce or is part of a general system so engaged then he might recover in this action. (*New York Central R. R. Co.* v. *Porter,* 249 U. S. 168.) A track repairer would be then engaged in work so closely related to such commerce as practically to become a part of it. But a track repairer is not so engaged unless the railroad itself is an instrumentality thereof. Because a passenger intending to go to Queenstown once or twice or a dozen times through a series of years boards a Ferry street car and so, on the assumption we are now making, causes that particular car to become engaged in interstate commerce, the railroad itself, obviously built for other purposes and obviously substantially used for them, does not itself become forever afterward an instrumentality of such commerce. The difference lies in the substantial use made of the road. It is a matter of degree. " Generally, when the applicability of the Federal Employers' Liability Act is uncertain, the character of the employment, in relation to commerce, may be adequately tested, by inquiring whether, at the time of the injury, the employee was engaged in work so closely connected with interstate transportation as practically to be a part of it." (*Southern Pacific R. R. Co.* v. *Industrial Accident Commission,* 251 U. S. 259, 263.)

The order of the Appellate Division must be reversed and that of the Trial Term affirmed, with costs in this court and in the Appellate Division.

POUND, J. (dissenting). I dissent on the ground that the system of transportation between New York and Canada adopted by appellant brings it under the provisions of the Federal Employers' Liability Act which contains no pertinent exceptions applicable to street rail-

ways engaged in interstate or foreign commerce. (*Spokane & I. E. R. R. Co. v. Campbell*, 241 U. S. 497, 507.)

HISCOCK, Ch. J., CRANE and LEHMAN, JJ., concur with ANDREWS, J.; POUND, J., dissents in memorandum, in which CARDOZO, J., concurs; MCLAUGHLIN, J., absent.

Order reversed, etc.