THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* HORTON MOTOR LINES, INC., Appellant.

Court of Special Sessions of City of New York, Appellate Part, First Department, March 10, 1939.

*Robert C. McCreedy*, for the appellant.

*William C. Chanler, Corporation Counsel* [*Alan M. Stroock* of counsel], for the respondent.

Bayes, Ch. J. Appeal by defendant, Horton Motor Lines, Inc., from judgment of the Municipal Term, Part I, of the Magistrates' Court of the City of New York, rendered January 17, 1938, adjudging defendant guilty of violation of sections 140–142 of article 11, chapter 14 of the Code of Ordinances of the City of New York. Upon compliance with the ordinance, sentence was suspended.

The complaint, verified by Ezra Grossman, inspector of licenses, alleges: " that on the 16th day of November, 1937, at the City of New York, and County of New York, Horton Motor Lines, Inc., (now here) did unlawfully engage in the business of carting merchandise for the public within the City of New York, more particularly at 623 Washington Street, New York City, without first having procured a license therefor, in violation of Chapter 14, Article 11, Section 140–147 of the Ordinances of the City of New York."

The original complaint charges violation of sections 140–142, which have erroneously been copied as sections 140–147 in the magistrate's return as well as in the copy of the complaint before this court.

Section 140 of said article 11, chapter 14, reads as follows:

" Section 140. Definitions. Every vehicle, of whatever construction drawn by animals or propelled by motor power, which is kept for hire or used to carry merchandise, household or office furniture or other bulky articles within the city, for pay, shall be deemed to be a public cart, and the owner thereof shall be deemed to be a public cartman."

Section 141 divides public carts into two classifications, viz., motor driven and horse drawn, with subclassifications as to each.

Section 142 provides that " upon the payment of the fee hereinafter provided, the Commissioner shall issue a license to the owner of the vehicle, together with a plate to be affixed " in the manner therein set forth.

Section 143 provides that an annual license fee of two dollars for horse-drawn carts, and five dollars for motor-driven cars, shall be paid.

The record discloses that defendant is a corporation organized and existing under the laws of the State of North Carolina, operating

motor trucks in its State of incorporation as well as in the States of New York, New Jersey, Pennsylvania, Maryland, District of Columbia, Virginia, South Carolina and Georgia; that defendant's general offices are at Charlotte, N. C.; that the operators of the trucks are employees of defendant; that goods carried by defendant from North Carolina and certain other States for delivery in New York city are brought to defendant's warehouse at Greensboro, N. C., there separated according to destination terminal, and conveyed by trucks known as tractor-trailers; that in the case of a single shipment comprising a solid load, the tractor-trailer may at times make delivery direct to the consignee's store door in New York city; that where the load consists of miscellaneous merchandise to be delivered to various consignees, the tractor-trailer is brought to defendant's terminal or warehouse at 623 Washington street, New York city, there unloaded and the merchandise assorted, and from the terminal delivered by ordinary motor trucks, which may be termed local delivery trucks, owned and operated by defendant, to various consignees within New York city; that these local delivery trucks also in turn pick up goods from such consignees within New York city for transportation to defendant's terminal at 623 Washington street in New York city; that this pick-up and delivery service supplied by the local trucks consists ordinarily of transportation of goods to and from the New York city terminal and points within said city, although at times they are used for service between the New York city terminal and nearby points in other States; that these local trucks are not used to handle shipments from consignor to consignee either within the city or to other States; that these ordinary motor trucks are licensed by the State of New York as well as by the Interstate Commerce Commission and have attached to them license plates issued by said State and said Commission.

This action involves one of the ordinary local trucks carrying merchandise from defendant's Washington street terminal for delivery within the city of New York.

The question at issue is whether the city of New York may lawfully require from defendant a license fee as applied to these small motor trucks employed for defendant's pick-ups and delivery service within the city to and from its said warehouse terminal. The People admit that the tractor-trailers do not require a license for their operations as carried on by them and further that any small motor trucks used exclusively to make pick-ups or deliveries from or to points outside the State of New York do not require a license therefor. Stated another way, we are called upon to determine whether defendant is exclusively engaged in the transportation of commodities in interstate commerce, or whether the local pick-ups

and deliveries to and from defendant's terminal merely precede or follow such interstate transportation and are, in so far as the licensing ordinances above mentioned are concerned, to be regarded as intrastate commerce. We are of the opinion that the use of the small motor trucks for local pick-ups and deliveries in the manner hereinabove set forth constitutes intrastate commerce and that the city of New York may lawfully require a license for the operation of such trucks.

In considering the question it seems appropriate to point out that defendant has chosen to break the transportation into two journeys, the one interstate, i. e., from without the State to its terminal in New York city, and the other intrastate, from said terminal to the individual consignee in New York city. In the latter, the goods are unloaded at the terminal and then loaded upon the small motor trucks for local city transportation to and from points wholly within the city of New York. A more carefully worded description of the mode of operation is contained in defendant's application under the Federal Motor Carrier Act (U. S. Code, tit. 49, §§ 301–327), Exhibit A–III–B, as follows: " The vehicles serving the above warehouses do not operate on regular routes, but are provided by this applicant to concentrate or distribute merchandise based on the continual or occasional requirements of shippers at points within the territory which each warehouse serves."

Since the defendant does in fact undertake " to concentrate or distribute merchandise," with the physical points both of origin and delivery in the city of New York, it is not unreasonable that the local trucks employed by defendant in this intracity transportation should be subject to license and regulation by the city. (*Pennsylvania R. R. Co.* v. *Knight*, 192 U. S. 21.) In *Pennsylvania R. R. Co.* v. *Knight* (*supra*) the court upheld a privilege tax upon the railroad company as applied to horse cabs used by the company to carry passengers from its terminal in the city to their homes. We quote from page 27 of the opinion as follows: " Wherever a separation in fact exists between transportation service wholly within the State and that between the States, a like separation may be recognized between the control of the State and that of the Nation."

This case warrants the distinction that is sought to be drawn in the case at bar, viz., that not only does the pick-up and delivery service rendered by the ordinary local trucks precede or follow the interstate shipment, but that it is separate and distinct therefrom.

If the licensing fee be viewed as in the nature of a tax, it may be pointed out that a local tax has been upheld as applied to the manufacture of articles intended solely for interstate sale. (*American*

*Mfg. Co.* v. *St. Louis,* 250 U. S. 459. See, also, *Minnesota* v. *Blasius,* 290 id. 1; *Federal Compress Co.* v. *McLean,* 291 id. 17.)

As a matter of fact we are here concerned with a license fee rather than a tax for revenue. By the issuance of licenses at a moderate annual charge of five dollars per truck, the city is enabled to maintain a record of all motor trucks used for local service within city confines and thereby, through constant supervision, be in position to protect the public from the unauthorized and improper use of the public streets. Viewed in this light, the license fee may be considered as laid upon the trucks and the privilege of employing them on the streets of the city.

From another angle, the licensing ordinance may be looked upon as a valid regulatory statute. As to this, see *South Carolina State Highway Dept.* v. *Barnwell Bros., Inc.* (303 U. S. 177), where it was held that a State might place a limitation upon the width and weight of vehicles using the roads, irrespective of whether the vehicles were engaged in interstate or intrastate transportation.

Two points are particularly stressed by defendant-appellant, *first,* that the ordinances in question do not apply, and *second,* that even if held to apply to defendant-appellant or to its vehicles, they are unconstitutional and void as attempting to regulate interstate commerce in violation of article 1, section 8, subdivision 3, of the Constitution of the United States.

As to the first point, it is established by the record that the ordinary local trucks operated within the city of New York are, in the language of the ordinance, " used to carry merchandise." The argument is made, however, that the merchandise is not carried " for pay." As to this, it should be noted that defendant does in fact make a separate charge for local pick-ups and deliveries under what it terms a " terminal charge." Although this local or so-called terminal charge is added to the overhaul tariff, the fact remains that it constitutes a separately calculated item that must be paid in pick-ups and deliveries to and from the terminal in New York city. The cases (*People* v. *Heckman Trucking Co.,* 277 N. Y. 480, and *City of New York* v. *Hexamer,* 59 App. Div. 4) which are cited by the defendant-appellant are distinguishable. The basis for the decision in the *Heckman* case is that the truck there in question was under the control of another at the time of the service of the summons and hence was not being used by the defendant. Moreover, it appears from the agreed statement of facts in that case that there was no charge for delivery within the city, whereas in the instant case such charge was separately computed and paid. In the *Hexamer* case the reversal was placed upon the ground that the statute did not authorize the municipal assembly to impose an annual

license fee sufficiently large to amount to a tax upon the carriages of defendant Heckman who was conducting a livery stable in the State of New Jersey and who, as an incident to his business in that State, sent carriages to meet the vessels of the North German Lloyd Steamship Company at its pier in Brooklyn. It is intimated in the opinion that if a mere license fee had been involved the decision would have been different.

As to the second point upon which particular stress is laid, viz., that in any event the ordinances are unconstitutional and void as in violation of article 1, section 8, subdivision 3, of the Constitution of the United States, we come in the last analysis to the same basic question as to whether or not the interstate transportation comes to an end when defendant unloads its merchandise at its terminal in New York city. We hold that it ends at the terminal, at least to the extent that the city may require the licensing of the local delivery trucks used by defendant to and from its terminal in the manner hereinabove set forth. In support of its appeal herein, defendant-appellant cites *Adams Express Co.* v. *City of New York* (232 U. S. 14); *People* v. *Von Rapacki* (158 Misc. 823), and *People* v. *Adley Express Company* (decided at Municipal Term, Part I, City Magistrates' Court, March 14, 1938) as correctly and completely stating the law which governs this case. As to *Adams Express Co.* v. *City of New York* (232 U. S. 14) it is to be noted that the ordinance was so drawn as to apply not merely to pick-ups and deliveries wholly within the city, but to those crossing State lines, the language being " every vehicle of whatever construction kept for hire or used for the conveyance of baggage  *  *  * *within or through* the city of New York for pay, shall be deemed a public expressman." Moreover, the court pointed out that in its practical application the ordinance undertook to affect, for the most part, vehicles employed primarily in interstate transportation. In *People* v. *Von Rapacki* (158 Misc. 823) this court followed the *Adams Express Co.* case (*supra*), for the reason, as stated at page 824, that " it is undisputed that the truck driven by the appellant was engaged exclusively in interstate commerce." It appears also that the truck under consideration in that case was loaded with merchandise consigned and transported direct from various New England cities to points in New York city and Long Island. There is no doubt but what the transportation and delivery from a point without the State direct to the consignee within the city is exclusively interstate commerce. In the case at bar the city does not seek to license trucks other than those used to transport merchandise " within the City," as hereinabove set forth. In the case of *People* v. *Adley Express Company* (*supra*) the facts as recited

in the opinion raise the same question as that involved in the instant case. The magistrate cites *People* v. *Von Rapacki* (158 Misc. 823) as authority for the proposition that trucks making local deliveries and pick-ups between a terminal in New York city and various points within the city are engaged in interstate transportation. As we read the record, the case of *People* v. *Von Rapacki* (*supra*) did not deal with the question of pick-ups and deliveries to and from a terminal within New York city and for that reason it is distinguishable on the facts from the case at bar. Defendant-appellant further urges that the licensing ordinances here in question are superseded and inoperative as applied to it, by the Federal Motor Carrier Act of 1935 and regulations passed thereunder. This point would have considerable weight if there were direct conflict between the ordinances and the requirements of the Federal act. Appellant regards the licensing ordinances as an attempt by the city of New York to regulate interstate motor carriers. As a matter of fact the city seeks nothing more than the licensing of the local delivery trucks which are kept and operated within the city limits. (See *Federal Compress Co.* v. *McLean*, 291 U. S. 17.)

Defendant-appellant challenges the sufficiency of the complaint in that it failed specifically to charge a violation of section 1 of article 1 of chapter 14 of the Code of Ordinances which reads as follows: " No persons shall engage in, or carry on any business or occupation or maintain any place or thing specified in this Section without a license therefor."

This section is followed by a list of businesses which includes public carting.

The record discloses that defendant was fully aware of the nature of the charge and further, that the defense rested upon the proposition that the truck in question was engaged in interstate commerce. In fact the motion to dismiss at the close of the People's case was specifically placed upon the ground that " this truck was engaged for hire or used to carry merchandise for others in interstate commerce." Clearly defendant was not harmed by the incompleteness of the complaint.

We are of the opinion that the judgment and conviction should be affirmed.

All concur. Present — BAYES, Ch. J., HACKENBURG and WALLING, JJ.