PONCE LIGHTER COMPANY, APELADA, *v.* EL MUNICIPIO DE PONCE ET AL., APELANTES.

Apelación procedente de la Corte de Distrito de Ponce.

No. 764.—Resuelto originalmente en mayo 24, 1912.

\* Resuelto en reconsideración en junio 20, 1913.

CONTRIBUCIONES POR PATENTES DE INDUSTRIA Y COMERCIO—FACULTADES DE LOS MUNICIPIOS EN PUERTO RICO PARA IMPONERLAS—CONSTITUCIÓN—COMERCIO ENTRE ESTADOS.—La demandante en este caso es dueña de varios ancones situados en el puerto de Ponce y dedicados a la carga y descarga de vapores

---

\* Este caso no fué insertado en el tomo 18 por estar pendiente de reconsideración.

procedentes de los Estados Unidos y del extranjero. El municipio de Ponce, de acuerdo con la Ley Municipal de marzo 8, 1906, votó una ordenanza para reglamentar la imposición y cobro de contribuciones por patentes de industria y comercio y entre otras cosas impuso dichas patentes a los lanchones marítimos clasificándolos en tres clases e imponiendo una patente máxima de $10 por cada lanchón. Se resolvió:

1. Que aun en el supuesto de que los ancones de la compañía demandante fueran embarcaciones que pudieran dedicarse al comercio entre Estados y se utilizaran únicamente para descargar barcos que navegaran exclusivamente entre los Estados Unidos y Puerto Rico, dichos ancones no estarían exentos de la contribución que les ha sido impuesta por el municipio de Ponce.

2. Que la sección 12 de la Ley Foraker autoriza al Gobierno Insular y al municipal para imponer contribuciones por patentes de industria y comercio de cualquier naturaleza que sea.

3. Que la contribución impuesta por el municipio de Ponce a la compañía demandante no es inconstitucional ni constituye un gravamen sobre el comercio entre Estados.

4. Que todo barco tiene una residencia (*situs*) para los fines de imponerle contribución, cuyo sitio generalmente es el puerto del domicilio de la compañía propietaria.

RECONSIDERACIÓN DE SENTENCIA.

RECONSIDERACIÓN DE SENTENCIA.—La parte demandante solicitó la reconsideración de la sentencia dictada en este caso entre otros fundamentos, porque la contribución impuesta por el municipio de Ponce constituye una ocupación sobre la industria de anconaje, cuya industria en este caso tiene el carácter de comercio entre Estados, habiendo pagado ya la compañía demandante la contribución correspondiente sobre el valor de los ancones. Se resolvió:

1. Los ancones de la compañía demandante no pueden ser considerados como embarcaciones dedicadas al comercio entre Estados, pues aun cuando estos ancones se dedican a descargar vapores que vienen de los Estados Unidos y del extranjero, por lo que respecta al puerto de Ponce puede decirse que al anclar el barco ha terminado su viaje y los ancones de la compañía demandante empiezan a prestár servicios después que ese viaje ha sido consumado.

2. Es el deber de los tribunales acatar la voluntad del poder legislativo expresada por medio de sus leyes y nunca debe ser declarada nula una ley por inconstitucional, al menos que se pruebe fuera de toda duda razonable que dicha ley es contraria a la Constitución, pero cualquier duda en ese sentido debe ser interpretada a favor de la validez de la ley.

3. El mero hecho de que una compañía esté dedicada al comercio entre Estados no impide el que esté sujeta al pago de contribución de patentes de industria y comercio por ejercer dicha industria o comercio, siempre y cuando que la ley u ordenanza que imponga dicha contribución sea uniforme y no establezca distinciones perjudiciales.

4. El hecho de que la contribución de patentes de industria y comercio sea impuesta a la compañía demandante clasificando en tres clases los ancones, segun el tonelaje de cada uno, no transforma la naturaleza de dicha contribución en impuesto de tonelaje, ni invalida dicha ordenanza.

5. La ley de julio 14, 1906, reglamentando el servicio de muelles y puertos de Puerto Rico no ha derogado los preceptos de la ley municipal de 1906

autorizando a los municipios para imponer contribuciones de patentes de industria y comercio.

6. No hay nada en la Ley Foraker que limite las facultades del Gobierno Insular y de los municipios de Puerto Rico en el sentido de prohibirles imponer contribuciones de patentes de industria y comercio.

7. Examinada la demanda la corte llega a la conclusión de que los ancones en cuestión no están dedicados exclusivamente al comercio entre Estados.

Los hechos están expresados en la opinión.

Abogado de los apelantes: *Sr. Nemesio R. Canales.*

Abogado de la apelada: *Sr. José A. Poventud.*

EL JUEZ ASOCIADO SR. WOLF emitió la opinión del tribunal.

Se inició este pleito mediante una demanda que fué presentada en la corte municipal de Ponce. Los demandados formularon una excepción previa a la demanda y al ser ésta desestimada, formularon su contestación en la que virtualmente admitían todos los hechos de la demanda. La corte municipal declaró con lugar la demanda, adoptando en sustancia la corte de distrito aquel procedimiento. Los hechos contenidos en la demanda son sustancialmente los siguientes:

Que la corporación demandante es y ha sido desde antes de enero 1 de 1909, una corporación creada con arreglo a las leyes de Puerto Rico y es dueña y posee en el puerto de Ponce 23 ancones, con los que se dedica y se ha dedicado siempre en el expresado puerto de acuerdo con sus cláusulas de incorporación, al negocio de descargar las mercancías, efectos y demás carga traída a este puerto de Ponce por vapores y buques procedentes del extranjero y de los puertos de los Estados Unidos, dedicándose también a cargar los mismos con mercancías, efectos y demás cargas que de este puerto salen para el extranjero y otros puntos y puertos de los Estados Unidos, siendo este negocio absolutamente indispensable para que dichos vapores y buques, ocupados en el comercio y transporte de carga entre los Estados de la Unión, las naciones extranjeras y Puerto Rico, puedan descargar sus expresadas mercancías y efectos en este puerto como asimismo transportarlos de aquí para los referidos puntos, debido ello a la circunstancia de ser la había y puerto de esta ciudad de

Ponce sumanente llano, que todos los indicados vapores y buques tienen que anclar y fondear como a media milla próximamente de distancia de tierra.

Que en la playa de la municipalidad de Ponce no existe ni ha existido, ningún muelle, atracadero u otro adelanto o construcción perteneciente al municipio demandado, que utilice o pueda utilizar la demandante en su referido negocio de anconaje, ejerciendo el mismo exclusivamente en el puerto de Ponce, que es propiedad, y está bajo la absoluta jurisdicción del Almirantazgo del Gobierno de los Estados Unidos.

Que el municipio de Ponce es una corporación municipal creada por las leyes de Puerto Rico, con capacidad para demandar y ser demandada, siendo los otros dos demandados el Tesorero e investigador municipal del mismo, encargados de cobrar y recaudar las patentes y derechos de industria y comercio impuestos por el referido municipio de Ponce.

Que la demandante tiene, y ha tenido desde antes de 1 de enero de 1909, además, un contrato con la corporación extranjera "The New York & Porto Rico Steamship Co." para descarga de sus vapores en este puerto de Ponce, haciendo viajes dichos vapores, con carga y pasajeros, entre los puertos de New York City, New Orleans, San Juan y Ponce.

Que la demandante paga y ha pagado siempre, contribuciones insulares y municipales al Tesorero de Puerto Rico sobre el valor de sus referidos ancones, de acuerdo con las leyes de esta Isla sobre esa materia; de cuyas contribuciones sobre la propiedad el municipio de Ponce recibe y ha recibido siempre su parte proporcional.

Que en virtud de una "Ley para reglamentar el servicio de muelles y puertos en Puerto Rico," aprobada por la Legislatura Insular en 14 de julio de 1906, dicha demandante tiene y ha tenido siempre registrados todos sus expresados lanchones en la oficina del Capitán de Puerto de Ponce, pagando también los derechos anuales que esa ley impone por obtener, como tiene y ha tenido siempre obtenidas, las corres-

pondientes licencias de la capitanía de puerto para poderse dedicar al indicado negocio de anconaje.

Que la actora ha tenido que obtener, como tiene obtenida otra licencia para trasportar mercancías con sus lanchones en el Puerto de Ponce, librada por el Colector de Aduana de San Juan, P. R., previa fianza que tiene allí prestada de $4,000 por ejercer dicho negocio, todo ello de acuerdo con los "Customs Regulations of the U. S. of 1899." Luego sigue una copia de la licencia.

Que el municipio de Ponce para el año económico de 1910 a 1911, y en junio de 1910, aprobó una ordenanza para la imposición y cobranza de patentes de industria y comercio, o sea para el cobro de derechos sobre licencias por el ejercicio de ciertos negocios, siendo la parte de esa ordenanza que se refiere al negocio de la demandante, como sigue:

"Ordenanza para la imposición y cobranza de la tarifa para patentes de industria y comercio para el año económico de 1910 y 1911.

"*Por cuanto,* según las disposiciones de la ley votada por la Asamblea Legislativa de Puerto Rico titulada "Ley para establecer un sistema de Gobierno Local" y para otros fines, aprobada en ocho de marzo de 1906, los concejos municipales tienen facultades para derivar sus rentas del producto de cualquier patente comercial o industrial impuesta de acuerdo con las disposiciones de dicha ley.

"*Por cuanto,* el concejo municipal de Ponce tiene necesidad de cubrir parte de los gastos de su presupuesto para el año económico de 1910 a 1911 con el producto de las patentes de industria y comercio.

"*Por cuanto,* todas las patentes municipales para el ejercicio de 1910 a 1911 y todas las contribuciones que hayan de imponerse por el municipio para ser recaudadas durante el propio ejercicio se ajustarán a los términos de la ley antes citada y de la que enmendó la sección 74 de la misma, aprobada en marzo 14 de 1907.

"*Por tanto, ordénese por el concejo municipal de Ponce:* Sección Unica. Que durante el año económico que comenzará en primero de julio de 1910 y terminará en 30 de 1911, en los subsiguientes, mientras que por el concejo no se dispusiere otra cosa, se impongan y cobren para cubrir las atenciones del municipio, contribuciones por patentes de industria y comercio con sujeción a la siguiente: Tarifa para patentes de industria y comercio. Grupo 8°. Misceláneas. Lanchones Ma-

rítimos.   Clase 1ª. de más de 30 toneladas, $10.   Clase 2ª.   Hasta 30 toneladas, $8.   Clase 3ª.   Hasta 10 toneladas, $4.''

Que por otra ordenanza del mismo municipio, aprobada en el mismo mes y año que la anterior, para regular el cobro de patentes e impuestos municipales y otros fines, se establece que, para el ejercicio de cualquier negocio u ocupación de los comprendidos en las tarifas acordadas por el concejo municipal, entre las que se encuentra la que se deja transcrita en el hecho anterior, es indispensable que los que deseen establecerlo presenten una solicitud al tesorero municipal, especificando la naturaleza y clase del mismo.   También se dispone en esta ordenanza que incurrirá en multa de $2 a $50 según la cuantía de la cuota contributiva, toda persona que emprendiere negocios sin la patente expedida.   Luego siguen algunas prescripciones que determinan mas claramente la naturaleza de la ordenanza.   Luego continúa la demanda expresando que los demandantes pagaron al municipio de Ponce la cantidad de $190 siendo esa suma el importe de la contribución o patentes municipales correspondientes al año 1911, e igual suma por el año que terminó en 1910.   Se expresa además en la demanda que la fijación de tales contribuciones está en pugna con las siguientes disposiciones de la Constitución de los Estados Unidos: Enmienda 14, artículo 1º., sección 8ª., párrafo 3;   artículo 4º., sección 3, párrafo 2;   artículo 1º.. sección 10, párrafo 3;   y es contrario a las siguientes leyes Federales: artículos 34, 13, 9, 14 y 38 de la Ley Foraker; Ley del Congreso de marzo 3 de 1899;   secciones 4385 y 1891 de los Estatutos Revisados de los Estados Unidos;   y ''Customs Regulations of 1899,'' artículos 1079, 1104, 1105 y 1107. Alega la demandante que con arreglo a esta prohibición de la Constitución y Leyes Federales tiene derecho a estar exenta de las expresadas contribuciones o patentes municipales mediante devolución de las mismas.

La corte inferior resolvió debidamente que el Estado podía cobrar contribuciones así como también que el municipio tenía derecho a fijar contribuciones para explotar un negocio, y que

la contribución fijada por el municipio no sería inválida, y se hicieron citas de autoridades, pero la corte sostuvo la demanda por otras razones.

La alegación principal hecha por la demandante y apelada es que el cobro de estas contribuciones por parte de la municipalidad de Ponce constituye un gravamen indebido al comercio entre Estados y es por tanto inconstitucional y nulo. La corte cita numerosas autoridades en apoyo de este principio: *Sinnot* v. *Davenport,* 22 How., 227; *Foster* v. *Davenport,* 22 How., 246; *The Daniel Ball,* 10 Wall, 557; *Moran* v. *New Orleans,* 112 U. S., 69; *Gloucester Ferry Co.* v. *Pennsylvania,* 114 U. S., 196; *Robbins* v. *Shelby County,* 120 U. .S., 489; *Leloup* v. *Port of Mobile,* 127 U. S., 640; *Lyng* v. *Michigan,* 135 U. S., 161; *Crutcher* v. *Kentucky,* 141 U. S., 47; *Ficklen* v. *Shelby Co.,* 145 U S., 1; *Brennan* v. *Titusville,* 153 U. S., 297; *Telegraph Co.* v. *Adams,* 155 U. S., 695; *Osborne* v. *Florida,* 164 U. S., 652.

El principal caso sobre este punto es el de *Leloup* v. *Port of Mobile,* 127 U. S., 640.

En la página 648 de ese volumen la corte dice lo siguiente:

"En nuestra opinión tal interpretación de la Constitución nos lleva a la conclusión de que ningún Estado tiene derecho a imponer una contribución sobre el comercio entre Estados en forma alguna, ya sea a manera de impuestos fijados sobre la transportación de los efectos de ese comercio, o sobre los beneficios obtenidos por dicha transportación, o sobre la ocupación o negocio de llevarlo a efecto; y la razón es que tal contribución es un gravamen sobre ese comercio y equivale a una reglamentación del mismo, lo cual pertenece exclusivamente el Congreso. Este ha sido el resultado a que se ha llegado en un sinnúmero de recientes casos, haciéndose casi innecesario el hacer citaciones."

Pero la corte continúa expresándose en los siguientes terminos:

"Podemos repetir aquí lo que a menudo hemos dicho antes, que esta exención del comercio entre Estados y extranjero de la reglamentación del Estado no impide a éste fijar una contribución a la propiedad

de aquellos que se dediquen a dicho comercio y cuya propiedad esté situada dentro del Estado, de igual modo que se fija una contribución a cualquier propiedad de otros ciudadanos, ni de reglamentar ciertas cuestiones de interés local que puedan indirectamente afectar al comercio; así como aquellas que se relacionan con el muellaje, pilotaje, y otras semejantes. No hace mucho que estuvo sometida a nuestra consideración la cuestión referente al derecho de fijar una contribución a la propiedad de una compañía de telégrafo, en el caso de *Western Union Telegraph Co.* v. *Massachusetts,* 125 U. S., 530.''

Suponiendo por un instante que estos lanchones de la demandante son embarcaciones o medios de transporte del comercio y que corresponden a la clase de embarcaciones que podrían dedicarse al comercio entre Estados, resulta claro de la demanda, que dichos lanchones no solamente están sometidos al comercio entre los Estados Unidos y Puerto Rico, sino que también se usan para descargar buques que proceden de puertos extranjeros. Considerando las admisiones de la demanda, no podría decirse que esta compañía se dedica exclusivamente al comercio entre los Estados Unidos y Puerto Rico y aun cuando estos lanchones fueran embarcaciones pertenecientes a una compañía incorporada en Puerto Rico y que viajan solamente entre el puerto de Ponce y el puerto de New York, las autoridades se expresan claramente en el sentido de que aun en ese caso estarían sujetas a la fijación de una contribución local. Se establece una diferencia entre alguno de los casos citados por el juez de distrito en el caso de *Old Dominion Steamship Co.* v. *Virginia,* 198 U. S., 308, en los que la misma corte establece la diferencia de que los barcos o embarcaciones que se encuentren temporalmente en un puerto no están sujetos a la fijación de una contribución por el Gobierno de la jurisdicción, sino que debe imponerse la contribución en los puertos de sus matrículas en donde tienen su lugar (*situs*). Cuando tienen su sitio (*situs*) en determinado Estado, se dice en la opinión, que quedan incorporados a los otros bienes muebles del Estado. El principio relativo al derecho a quedar exento de la fijación de una contribución y sus excepciones, se acentúa aún más en el caso de

*Atchison, Topeka and Santa Fe Railway Co.* v. *Sowers,* 213
U. S., 55. De nuevo la Corte Suprema en el caso de *Southern
Pacific Co.* v. *Kentucky,* 222 U. S., 63, suscita la cuestión de
que cualquier barco tiene un lugar (*situs*) donde puede fijár-
sele una contribución y recientemente en el caso de *Gromer*
v. *The Standard Dredging Co.,* 224 U. S., 362, tanto en la
opinión de la mayoría como en el voto particular, la corte
resuelve y presenta de modo claro el hecho de que todo barco
tiene un lugar (*situs*) donde puede fijársele una contribución.
Además, estos lanchones de la demandante estaban sujetos
a alguna jurisdicción y al pago de una contribución. No se
encontraban dentro de la jurisdicción exclusiva de los Esta-
dos Unidos. Por el hecho de que estuvieran en el puerto de
Ponce y no se encontraran agregados a algún muelle o embar-
cadero no están exentos de que se les imponga una contribu-
ción. (*Gromer* v. *Standard Dredging Co.,* citado anterior-
mente.

Alga además la apelada que la contribución fijada a estos
lanchones es nula e inconstitucional por ser un impuesto de
tonelaje. Propiamente hablando, la contribución fijada no
es una por tonelaje porque ella no es proporcional al ver-
dadero tonelaje de los lanchones, pues divide dichos lanchones
en tres clases, de acuerdo con su actual capacidad o tone-
laje. En los casos de *State Tonnage Tax Cases,* 12 Wall.,
204, y siguientes, el Tribunal Supremo de los Estados Uni-
dos ha declarado que las contribuciones fijadas con arreglo
a cada tonelada de las que se encuentren registradas, es
contrario a una prohibición de la Constitución, y que el caso
no varía por el hecho de que los barcos no solamente perte-
necían a ciudadanos de los Estados Unidos, sino que se encon-
traban dedicados exclusivamente al comercio en sitios com-
prendidos entre los Estados. Sin embargo, el objeto de esta
prohibición contra la fijación de un impuesto por tonelaje es
el de evitar que los Estados impongan contribuciones a barcos
por el mero privilegio de que gozan, de entrar a un puerto o
puertos de los respectivos Estados. El propósito de la pro-

hibición fué el de no establecer ninguna restricción en el libre tráfico de barcos entre puerto y puerto. En el caso de *Transportation Co.* v. *Parkersburg,* 107 U. S., 698, la corte establece una diferencia entre lo que es y no es un derecho por tonelaje y lo define como un derecho que se fija sobre un barco por el privilegio que tiene de arribar a un puerto. En este caso se declaró válido un derecho de muellaje que se había fijado tomando en consideración la capacidad de los barcos por tonelada. Otro caso en el que aparece igual distinción es el de *Cannon* v. *New Orleans,* 20 Wall., 577. Estos lanchones no eran embarcaciones según el sentido en que generalmente esa palabra se usa, ni viajaban entre puerto y puerto. Estaban dedicados exclusivamente al negocio de anconaje en el puerto de Ponce.

Creemos además que el artículo 12 de la Ley Orgánica autoriza a los Gobiernos insular y municipal para imponer una contribución por una licencia o negocio de cualquier clase que se lleve a efecto dentro de los límites reconocidos de la municipalidad. La municipalidad era un mandatario de El Pueblo de Puerto Rico y toda clase de negocios obtiene la protección del Estado y del municipio por medio de ordenanzas que emanan del municipio, de la sanidad o del poder administrativo.

Antes de que podamos confirmar la sentencia en este caso hubiéramos tenidos necesidad de resolver que el comercio entre New York y Puerto Rico es comercio entre Estados, según el significado relativo al comercio entre Estados a que se refiere la cláusula de la Constitución de los Estados Unidos. Puesto que nuestra sentencia es revocatoria, no creemos necesario discutir esta cuestión. La sentencia debe revocarse y dictarse otra a favor de la demandada.

*Revocada.*

Jueces concurrentes: Sr. Presidente Hernández y Asociados MacLeary, del Toro y Aldrey.

HABIÉNDOSE PRESENTADO con posterioridad una moción de

reconsideración de sentencia, se celebró una segunda vista, y el Juez Asociado Sr. Wolf, en junio 20, 1913, emitió la siguiente opinión del tribunal:

Varios son los fundamentos y razonamientos sometidos a nuestra consideración para la reconsideración de este caso.

(*a*) La parte apelada al discutir la primera opinión emitida en este caso, trata de la cita que hicimos allí del final de la opinión emitida en el caso de *Leloup* v. *Mobile,* 127 U. S., 648, 649, y sostiene en sustancia, que la Corte Suprema en ese caso se limitó a excluir la contribución sobre la propiedad de la regla en dicho caso establecida; que en el caso de autos se trata de contribución impuesta exclusivamente sobre el negocio u ocupación de anconaje; que el anconaje a que se dedica la parte apelada en este caso tiene el carácter de comercio entre Estados y que la parte apelada ha pagado contribución sobre el valor de los ancones.

Una gran parte de los informes de las partes en este caso trata la cuestión de jurisdicción para imponer contribución a estos ancones, sosteniendo la parte apelada, o sea el demandante, en la corte inferior, en el párrafo 2º. de la demanda, que el puerto de Ponce está bajo la jurisdicción exclusiva del Almirantazgo de los Estados Unidos. La apelada no ha vuelto a reiterar esta cuestión del almirantazgo, la cual ha sido definitivamente resuelta en el caso de *Gromer* v. *The Standard Dredging Company,* 224 U. S., 362. Pero en el caso de *Leloup* v. *Mobile,* la corte también dijo lo siguiente:

"A las ocupaciones corrientes se les imponen contribuciones de distintas maneras y en la mayoría de los casos están legalmente impuestas. Pero no podemos comprender cómo puede un Estado imponer contribución a una ocupación comercial, si no puede imponer la contribución al negocio en sí. Desde luego que el cobro de una contribución por concepto de licencia como condición previa para ejercer determinado negocio, constituye una contribución sobre la ocupación, y tal clase de impuesto indudablemente es una contribución sobre el negocio en sí."

Nosotros creímos y seguimos creyendo que en el caso de

*Leloup* v. *Mobile,* la Corte Suprema de los Estados Unidos manifestó su intención de no tratar de reglamentar asuntos que por su naturaleza esencial eran de carácter local.   La parte apelada sostenía que los ancones situados en el puerto de Ponce estaban fuera de la jurisdicción de Puerto Rico.   Esta cuestión de jurisdicción no sólo fué planteada por la parte apelada en el párrafo 2º. de su demanda, sino que además el abogado al citar en la demanda las leyes que él creyó que habían sido infringidas por el municipio, citó artículos de la Ley Foraker y de los Estatutos Revisados de los Estados Unidos que necesariamente hacen referencia a cuestiones de jurisdicción marítima, y para demostrar aún más el principio que establecen las citas del caso de *Leloup* v. *Mobile,* véanse los casos de *Pullman's Palace Car Company* v. *Pennsylvania,* 141 U. S., 23;   *Brennan* v. *Titusville,* 153 U. S., 303.   Tanto en el alegato de la parte apelada como en la opinión del tribunal sentenciador en la cual se apoya en gran parte la apelada, se citan casos en los cuales la corporación o persona a quien se ha impuesto la contribución y que impugna la ley u ordenanza que la autoriza, era una corporación o persona que no estaba sujeta a la jurisdicción local o que representaba a una corporación o persona que tampoco lo estaba.

No hemos pasado por alto el hecho de que la apelada alegó que ejercía el comercio entre Estados, pero lo que se deducía principalmente de la demanda era que tal comercio entre Estados no podía ser reglamentado por Puerto Rico por ser ejercitado dicho comercio en aguas fuera de su jurisdicción. Bajo tales circunstancias, ya consideremos la contribución como una contribución sobre la propiedad o sobre una ocupación, las razones para declararla nula coincidirían.   Estos ancones que es de presumir estaban en el puerto de Ponce, no podrían, por tanto, estar sujetos al poder contributivo de Puerto Rico sino por medio de una contribución sobre la franquicia de la corporación del país como tal.

(*b*) En nuestra opinión original expresamos la duda

acerca de si estos ancones eran en realidad medios o instru-
mentos para el comercio. Surgió la idea de que probable-
mente estas pequeñas embarcaciones solamente se utilizaban
después que había quedado consumado el negocio entre Es-
tados. El hecho de que en otros puertos se necesiten embar-
caciones o ancones para rendir el viaje, no es aplicable a este
caso, si la embarcación ha llegado a su destino. En Ponce
y en otros puertos el barco que entra, ancla en la bahía den-
tro de la jurisdicción de Puerto Rico y puede estimarse que
el viaje entre Estados ha sido rendido. Además, ya hemos
tenido ocasión de ver en el caso de *Pagán López y Com-
pañía* v. *Mayagüez Dock and Shipping Company,* 18 D. P. R.,
396, que en siete conocimientos de embarque de la ''New York
and Porto Rico Steamship Co.,'' dicha compañía reclamaba
el derecho de poder entregar al consignatario a opción del
capitán, las mercancías al costado del buque o alquilar anco-
nes por cuenta de los dueños de las mercaderías descargán-
dolas en ellos. Resolvimos en dicho caso que el consigna-
tario podía ejercitar el mismo privilegio de opción. Desco-
nocemos si este privilegio de opción se hace constar en todos
los conocimientos de embarque, pero si así fuera, demuestra
claramente que el viaje entre Estados termina, según pode-
mos razonablemente presumir, al anclar el barco. Tal vez
los hechos en dicho caso no estén directamente sometidos a
esta corte, pero creemos que para que la demandante ale-
gara una causa de acción era necesario que expresara que la
''New York and Porto Rico Steamship Co.'' por medio de sus
contratos o por otro medio, se obligaba a hacer el transporte
de pasajeros y carga a la playa.

(*c*) En la opinión original hicimos alusión al hecho de que
los ancones de la parte apelada se utilizaban no solamente
en el comercio entre Estados, sino también con el extranjero
y la apelada hace hincapié en esta manifestación para expre-
sar que el comercio con el extranjero también está bajo la
dirección exclusiva del Congreso. Lo que en realidad tenía-
mos en nuestra mente, y más adelante discutiremos el punto,

fué que estos ancones no podía presumirse que pertenecieran a un comercio de índole especial, sino de un carácter general. Eso también se deduce de otro modo de la demanda misma. En el párrafo 4º. de ésta, la demandante alega que tiene un contrato con la corporación extranjera "The New York and Porto Rico Steamship Co." que hace viajes con carga y pasajeros entre los puertos de New York, New Orleans, San Juan y Ponce. Si aun ésta no fuera una manifestación específica, la corte tendría conocimiento judicial del itinerario de las líneas de vapores y de que dicha compañía no sólo se dedica al comercio entre Estados sino también intraestados en los distintos puertos de Puerto Rico y este comercio intraestado en lo que toca al transporte marítimo es casi exclusivo de dicha compañía. El contrato de la "Ponce Lighter Company" con la "New York and Porto Rico Steamship Co.," según se desprende del mismo párrafo, es descargar los vapores de dicha compañía.

(*d*) Ahora se aducen nuevos argumentos en apoyo de la reconsideración de este caso, los cuales aunque no alteran la opinión en definitiva de esta corte, hacen el que sea conveniente tratar de explicar de una manera más amplia entre otras cosas, la índole de la cuestión constitucional envuelta y la significación verdadera de lo que es carga o gravamen sobre el comercio entre Estados.

El municipio de Ponce ha cobrado derechos de patentes a la apelada por utilizar determinados ancones en el puerto de Ponce, y la apelada, habiendo pagado dichas patentes bajo protesta trata ahora de recobrarlos. La corte inferior al emitir su opinión específicamente hace constar que no es su intención el declarar nula la ordenanza del municipio que impone los derechos de patentes y, al parecer, sólo resolvió que dicho municipio no·tenía derecho a cobrarlas a la apelada por estar ésta dedicada al comercio entre Estados. De modo que nos encontramos al parecer con una sentencia que declara inconstitucional el ejercicio de determinada facultad por una comunidad y, por tanto, que declara que la ordenanza es nula

e inconstitucional en lo que respecta a la apelada, cuya reso-
lución a nuestro juicio equivale a decir que un Estado no
puede cobrar derechos de patentes por el ejercicio del comer-
cio a aquella parte de sus ciudadanos que se dedica al comer-
cio entre Estados y que un individuo o corporación queda
exento de la carga del pago de contribuciones pagadas por
otra parte de la comunidad que se dedica al mismo comer-
cio u otro parecido, por el mero hecho de que este comercio
es de la índole de entre Estados y no interior. Asumimos
por lo menos de momento, que la apelada está dedicada exclu-
sivamente al comercio entre Estados.

Es el deber del tribunal seguir la voluntad de la legisla-
tura, al menos que el derecho que se trata de ejercitar sea
claramente contrario a la Constitución. Mr. Cooley, en su
obra "Constitutional Limitations," página 216, dice:

"Un jurisconsulto eminente ha dicho que cuando se acude a los
tribunales para que declaren la nulidad de una ley aprobada con
todas las formalidades y ceremonias necesarias para que tenga la
fuerza de tal, dichos tribunales tratarán la cuestión con gran cau-
ción, la estimarán bajo todos sus aspectos y la discutirán mientras
su deliberación y detenido estudio pueda arrojar alguna luz sobre
ella y nunca declararán nula una ley, al menos que la nulidad de la
ley quede establecida a su juicio fuera de toda duda razonable. Esta
debe ser resuelta en sentido favorable al poder legislativo y declarar
válida la ley.

"La cuestión de si una ley es nula por estar en oposición a la
constitución es siempre muy delicada, que debe muy raras veces
ser resuelta en sentido afirmativo en casos de duda. El tribunal
cuando se ve en el deber de pronunciar sentencia en ese sentido,
no sería digno de su jerarquía si no tuviera presente la obligación
solemne que le impone el cargo; y ni las deducciones ligeras ni las
conjeturas abstractas podrán servir de fundamento para declarar
que la legislatura se ha excedido en sus poderes y que sus leyes son
nulas. La contradicción entre la constitución y la ley debe ser tal
que el juez sienta una convicción clara y terminante de la incom-
patibilidad entre ambas. El Juez Wáshington aduce una razón en
apoyo de esta doctrina, que ha sido enunciada repetidas veces en otros
casos que ya hemos citado. Después de expresar la opinión de que

la cuestión especial que allí se trataba y que la constitucionalidad
de una ley de un Estado que allí se debatía estaba envuelta en gran
dificultad y duda. dijo él: 'Pero si yo pudiera fundar mi opinión a
favor de la constitucionalidad de la ley que se discute aunque no fuera
nada más que en la duda que tengo y que reconozco, eso por sí solo
sería a mi juicio una defensa suficiente a favor de ella. El presumir
que toda ley es válida hasta que se pruebe fuera de toda duda razo-
nable que infringe la constitución, no es más que tributar el respeto
debido a la sabiduría, la integridad y el patriotismo del poder legisla-
tivo que aprueba la ley.'

"Por tanto, la presunción es a favor de la constitucionalidad de
la ley, porque la legislatura primeramente resolvió la cuestión actuando
como es de presumirse que actúe, con integridad y con el deseo justo
de mantenerse dentro de las limitaciones impuestas por la constitución
a sus actos, así lo declaró. * * * "

Véase también el caso de *Brown* v. *Maryland,* 12 Wheaton,
419, 458.

Con esta presunción principalmente en nuestra mente es
que hemos vuelto a considerar la validez de la ordenanza del
municipio de Ponce, por lo que toca a la parte apelada.

La dificultad en determinar la línea divisoria entre la fa-
cultad de un Estado y la de los Estados Unidos para regla-
mentar el comercio, ha sido reconocida por la Corte Suprema
de los Estados Unidos en casi todos sus casos sobre la mate-
ria. Y para tener una idea de los principios fundamentales
no estará demás el referirnos a algunos de dichos casos.

En el caso de *Providence Bank* v. *Billings,* 4 Peters,
514–563, la corte por medio de su juez presidente, Sr. Mar-
shal, declaró que el poder legislativo y por consiguiente el
poder contributivo actúa sobre todas las personas y propieda-
des que constituyen el cuerpo político y que esto constituyó el
principio original que tuvo como fundamento la misma socie-
dad, que fué concedido por todos para el beneficio de todos y
que radicó en el gobierno como parte del mismo, y que por
absoluto que sea el derecho de un individuo, era esencial a ese

derecho el contribuir proporcionalmente a las cargas públicas y esa proporción debe ser determinada por la legislatura; que este poder vital puede ser abusado, pero la Constitución de los Estados Unidos no se hizo con el fin de servir de correctivo a todo abuso de poder que pudiera ser cometido por los gobiernos de los distintos Estados. Aunque este caso, estrictamente hablando, no trata del comercio entre Estados, es muy conveniente como base de donde arrancar, para determinar el concepto fundamental del poder contributivo de un soberano. Véase el caso de *Bradley* v. *The City of Richmond,* 227 U. S., 477.

Uno de los casos más importantes de la Corte Suprema de los Estados Unidos es el de *Woodruff* v. *Parham,* 8 Wall., 123. En él se declaró por la corte, que la imposición de una contribución uniforme por ordenanza de la ciudad de Mobile, en virtud de la autorización dada por la Legislatura de Alabama, sobre todas las ventas en pública subasta que se celebren en dicha ciudad era constitucional, porque era una contribución simple sobre todas las ventas de mercancías, impuesta con igualdad sobre todas las ventas hechas en Mobile, ya se verificaran en el Estado de Alabama o en otro Estado y ya se tratara de la venta de mercancías que fueran manufacturadas en el Estado o en otro Estado. No se trataba de establecer una desigualdad perjudicial a las manufacturas de otros Estados o a los derechos de sus ciudadanos, y la corte resolvió que no se trataba de coartar el comercio entre los Estados ni de privar a los ciudadanos de los otros Estados de derechos o privilegios de que gozaran los ciudadanos de Alabama. Es conveniente tener muy en cuenta en este particular la importancia de los elementos de igualdad y uniformidad, para determinar si un soberano ha impuesto un gravamen o ha coartado el comercio entre Estados.

En el caso de *Hinson* v. *Lott,* 8 Wall., 153, se resolvió por la corte, que la ley de un Estado en virtud de la cual se im-

ponía una contribución de 50 centavos por galón que debía
pagar el destilador por todos los licores intoxicantes que
importara en el Estado para su venta, era constitucional, por
el fundamento de que no se imponía una contribución mayor
a los licores que se introducen en el Estado que la impuesta
a aquellos que se fabricaban dentro del mismo, y que si bien
la contribución impuesta al destilador era al parecer la forma
más expedita de asegurar su cobro sobre los licores fabrica-
dos dentro del Estado, la contribución impuesta a aquellos
que vendían licores importados de otros Estados no era más
que una disposición suplementaria indispensable para que
la contribución impuesta fuera igual sobre todos los licores
vendidos en el Estado y la ley en discusión no produjo el
efecto de establecer preceptos que actuaran distintamente en
contra de los productos de los otros Estados, sino que única-
mente les imponía la misma contribución que pagaban artícu-
los semejantes fabricados dentro del Estado.     En el caso
de *Ward* v. *Maryland,* 12 Wall., 418, una ley de Maryland
que exigía a los que residían fuera del Estado de proveerse
de una patente más alta que la de los residentes del Estado,
fué declarada inconstitucional por su desigualdad.     En el
caso de *Welton* v. *Missouri,* 91 U. S., 275, también se declaró
inconstitucional una ley de Missouri por razón de su desi-
gualdad.     En el caso de *Robbins* v. *Shelby County Taxing Dis-
trict,* 120 U. S., 489, se resolvió que una ley de Tennessee que
exigía a "todos los agentes viajeros y a todas aquellas perso-
nas que no tuvieran una casa de comercio con la correspon-
diente patente en el distrito donde se imponía la contribución,
que ofrecieran en venta o vendieran por medio de muestras
artículos, efectos o mercancías" que pagaran semanal o men-
sualmente cierta cantidad de dinero en concepto de patente,
fué declarada inconstitucional por ser contraria a la facultad
del Congreso para regular el comercio entre los distintos
Estados, en cuanto se refería a aquellas personas que gestio-
naban órdenes en nombre de casas comerciales establecidas
en otros Estados.

Son numerosos los casos en los cuales la corte ha declarado inconstitucional aquellas leyes que imponen contribución a los agentes viajeros que meramente representaban personas establecidas fuera del Estado, que imponían contribuciones a compañías de express en concepto de patentes o en otra forma, que únicamente tenían establecida una agencia en sitio determinado; que imponían contribuciones a compañías de telégrafos y a otras semejantes, cuyos negocios se hacían necesaria y principalmente fuera del Estado, sin distinguir los negocios que hacían dentro del Estado, de los que hacían entre los distintos Estados. Sin embargo, en el caso de *Emmert* v. *Missouri,* 156 U. S., 296, la corte resolvió que la ley de un Estado en virtud de la cual se exigía a los vendedores ambulantes de mercancías que andan de sitio en sitio dentro del Estado, para vender, que sacaran y pagaran una patente bajo pena si no lo hacían, sin establecer diferencia entre los vendedores residentes y las mercancías del Estado y la de otros Estados, no era contraria a la facultad concedida por la Constitución al Congreso para reglamentar el comercio entre los distintos Estados, en cuanto dicha ley se refería a los vendedores ambulantes de mercancías que les habían sido enviadas por manufactureros de otros Estados. La corte examinó en dicho caso un gran número de decisiones, algunas de las cuales hemos citado anteriormente y entre ellos el caso de *Machine Co*. v. *Gage,* 100 U. S., 676, habiendo aprobado expresamente la doctrina sentada en este caso. En ese caso la Corte Suprema de Tennessee resolvió, que la ley de dicho Estado en virtud de la cual se imponía una contribución anual a todos los vendedores ambulantes de máquinas de coser, que hacían sus ventas por medio de muestras y que imponía dicha contribución a todos sin distinguir con respecto al sitio de producción de los materiales o de su fabricación, no infringía la Constitución de los Estados Unidos.

En el caso de *Nathan* v. *Louisiana,* 8 How., 73, la corte expresamente resolvió que el Estado tenía el derecho de imponer contribución a sus ciudadanos por el ejercicio de una in-

dustria o profesión cualquiera dentro del Estado.   La corte dijo:

"La facultad de un Estado para imponer contribución a sus ciudadanos por el ejercicio de una industria o profesión cualquiera dentro del Estado, no ha sido puesta en duda.   Y así vemos que en todos los Estados a los corredores de cambio de dinero, los vendedores de mercancía de fabricación nacional o extranjera, los detallistas de licores de quemar, los dueños de tabernas, los almonederos, los que ejercen una profesión de estudio y toda clase de propiedad que no esté exenta por la ley, se les impone contribución."

Y así también:

"Ningún Estado puede imponer una contribución de exportación ni de importación como tal, excepto con las limitaciones que marca la Constitución.   Pero antes de ser un artículo de exportación o después de dejar de ser un artículo de importación por confundirse con otros bienes en el Estado, está sujeto al pago de contribuciones impuestas por el Estado.   A cada comisionista de algodón se le puede exigir que pague una contribución sobre su industria, o que pague una patente, aun cuando se dedique a la venta y compra de algodón para la exportación extranjera."

Y además, la corte resolvió, que una contribución impuesta al negocio de un corredor de cambio que se dedica a la compra y venta de letras para el extranjero, no era contraria a las facultades del Gobierno Federal.

En el caso de *Kirtland* v. *Hotchkiss,* 100 U. S., 499, se trataba de un deudor extranjero y la corte dijo, que como la deuda se entendía existente en el sitio de residencia del acreedor, tanto el deudor como la deuda para los fines de la imposición de contribución estaban dentro de la jurisdicción del Estado y, por consiguiente, al Estado le tocaba determinar en armonía con sus leyes fundamentales si tales bienes pertenecientes a uno de sus residentes deberían contribuir por medio del pago de contribuciones a mantener los gastos del gobierno; y que su facultad discrecional en ese particular no podría ser revisada ni dirigida por uno de los Departamen-

tos del Gobierno Federal, porque tal contribución no infrin-
gía los preceptos del Gobierno Federal, y en apoyo de esa
doctrina se citaba el caso de *Nathan* v. *Louisiana* ya men-
cionado anteriormente.

En el caso de *Transportation Company* v. *Wheeling*, 99
U. S., 273, la corte resolvió que los vapores que navegan entre
distintos puertos de un río navegable, estaban sujetos, como
bienes muebles bajo la ley de un Estado, a la imposición de
contribuciones por la ciudad en donde la compañía propie-
taria de los mismos tenía su oficina principal y que al mismo
tiempo constituía el puerto principal de salida, aun cuando
estuvieran matriculados y se les hubiera expedido licencia
como vapores costaneros, de acuerdo con las leyes de los Esta-
dos Unidos, y que todos los derechos y cargas pagadas a di-
chos vapores bajo dichas leyes estaban bien pagadas. La
corte dijo: ''Varios casos resueltos sobre esta materia en
distintas partes han negado al Estado la facultad de imponer
contribuciones sobre barcos que sirven de medio al comercio,
pero en todos esos casos, de una manera expresa o tácita se
reconoce que el Estado puede imponer contribución a los due-
ños de tales bienes muebles por la participación que tienen en
los mismos. Idénticos conceptos expresa Mr. Burroughs en su
valioso tratado sobre contribución. Dice él que los barcos
de todas clases están sujetos al pago de contribuciones como
bienes, en la misma forma que otros bienes muebles poseídos
por ciudadanos del Estado. La prohibición de imponer la
contribución surte sus efectos cuando no se les impone dicha
contribución en la misma forma que se les impone a otros
bienes de los ciudadanos o cuando la contribución se impone
sobre la embarcación, considerándola como un medio para el
comercio, sin tener en cuenta el valor del barco.''

En el caso de *Moran* v. *New Orleans*, 112 U. S., 75, la corte
resolvió, que el poder del Estado para imponer contribu-
ciones, al menos que sea restringido por los preceptos de la
constitución federal, se extiende y abarca a todas las per-
sonas, bienes e industrias de sus ciudadanos, aunque no siem-

pre era fácil en casos determinados tirar la línea divisoria
entre ambos poderes.

The Kansas City Live Stock Exchange era una asocia-
ción de personas no incorporadas dedicada a negocios en sus
corrales de ganado situados algunos en Kansas City, Mis-
souri, y otros al otro lado de la línea divisoria que separa
Kansas City, Missouri, de Kansas City, Kansas. El nego-
cio de sus asociados consistía en recibir individualmente con-
signaciones de ganado, cerdos y otros animales, directamente
de sus dueños, no sólo procedentes de los Estados de Missouri
y Kansas, sino también de otros Estados y Territorios, ali-
mentar ese ganado y ponerlo en condiciones para el mercado
con objeto de venderlo, recibir los productos de la venta de
los respectivos compradores y pagar a los dueños la parte
proporcional del precio, deduciendo las cargas, gastos y can-
tidades adelantadas a cuenta de los mismos. Sus asociados
acostumbraban a solicitar cada uno consignaciones de los
dueños de ganado adelantándoles dinero a cuenta del mismo.
Los estatutos de la asociación prohibían a sus asociados el
que compraran ganado a comerciantes comisionistas de Kan-
sas City que no fueran socios de dicha asociación. Tam-
bién fijaban el importe de la comisión por la venta del ganado,
prohibían el empleo de agentes para solicitar consignaciones
a menos que estuvieran a sueldo fijo y también prohibían
enviar telegramas pagados o mensajes telefónicos dando in-
formes acerca del Estado del mercado. También disponían
que ningún asociado podría hacer negocios con ninguna per-
sona con infracción de dichos estatutos o con un asociado que
hubiera sido expulsado o suspendido después que fuera noti-
ficado de la infracción de tales estatutos, y la Corte Suprema
resolvió que el estar situados los corrales de ganado, parte
en Kansas y parte en Missouri, era un hecho que no tenía sig-
nificación alguna; que tal industria u ocupación de los dis-
tintos asociados de dicha asociación no tenía la índole de
comercio entre Estados en el sentido en que lo entiende la
ley de julio 2, 1890, capítulo 647, "Para proteger la indus-

tria y el comercio contra monopolios y restricciones ilegales''
y que dicha ley no abarcaba, ni fué su fin abarcar, conve-
nios de esa naturaleza y la corte dijo:

"Pero entre todos los casos elevados a este tribunal no hay uno en
que se haya negado la distinción que existe entre una ordenanza que
directamente afecta y perjudica a la industria o comercio entre Esta-
dos y otra que únicamente sea un impuesto que se paga por la facili-
dad que una localidad da para el ejercicio del comercio. Por el con-
trario los casos ya citados demuestran la existencia de esa distinción
y la validez de un impuesto por utilizar esa facilidad." *Hopkins* v.
*United States,* 171 U. S., 578–597.

En el caso de *American Steel and Wire Company* v.
*Speed,* 192 U. S., 500, en el cual la opinión fué emitida por
el Juez Asociado Sr. White, la corte resolvió que las mercan-
cías que se traen en sus envases originales desde otro Estado,
después que han sido recibidas en el punto de destino y per-
manecen dentro del Estado con la protección que las leyes
del mismo dispensan, se les puede imponer contribución de la
misma manera que a otros bienes que radican dentro del Es-
tado, sin hacer distinción alguna entre ellos, y sin infringir
el artículo de la Constitución relativo al comercio, aunque
estén entonces almacenados en el punto desde donde serán
distribuídos en los mismos envases originales, por la compa-
ñía almacenista a los distintos compradores de varios Esta-
dos. En este caso, la corte después de examinar varias deci-
siones ratifica la doctrina sentada en los casos de *Woodruff*
v. *Parham* y *Emmert* v. *Missouri*, citados anteriormente.

Otro caso reciente e interesante que trata del comercio
entre Estados es el de *Hatch* v. *Reardon*, 204 U. S., 161, en el
cual la corte resolvió, que el artículo de la constitución federal
relativo a la protección del comercio no podía ser invocado
para anular la ley de un Estado por la cual se impone una
contribución pagadera por medio de sellos a los negocios que
se hagan dentro del Estado, impugnada por el fundamento
de que perjudica bienes radicados fuera del Estado o por-

que algunas de las personas a quienes afecta proceden de otros Estados, y la corte cita los casos de *Nathan* v. *Louisiana, Woodruff* v. *Parham, Emmert* v. *Missouri* y *American Steel and Wire Company* v. *Speed* que ya hemos citado anteriormente.

En el caso de *Brown-Forman Company* v. *Kentucky,* 217 U. S., 572, la corte dijo:

"Llegamos ahora a la cuestión de si esta ley establece una distinción arbitraria entre distintas personas o corporaciones que se dedican al mismo negocio. La cuestión es, después de todo, de clasificación de materias, industrias y ocupaciones, con el fin de imponer la contribución y ataña al poder discrecional de los Estados para establecer los métodos, materias y tipo de la contribución. Esta facultad del Estado para ejercer la función de imponer contribuciones tan fundamental como es para su existencia, está sujeta, sin embargo, a la restricción beneficiosa de que no podrá ser ejercitada de tal modo que niegue a todos la protección uniforme de la ley."

En el caso de *U. S. Express Company* v. *Minnesota,* 223 U. S., 335, la corte dijo: "La facultad del Estado para imponer contribución a la propiedad, aun cuando ésta se use en el comercio entre Estados, está bien sentada. *Postal Telegraph Cable Company* v. *Adams,* 155 U. S., 688; *Pullman's Palace Car Co.* v. *Pennsylvania,* 141 U. S., 18; *Ficklen* v. *Shelby County,* 145 U. S., 1–22. La dificultad ha consistido y consiste en distinguir entre el ejercicio legítimo del poder del Estado de imponer contribución y aquellas leyes que bajo la apariencia de imposición de contribuciones, en realidad imponen gravámenes al comercio entre Estados como tal. Esa dificultad ha sido reconocida en el caso de *Galveston, Harrisburg y San Antonio Ry. Co.* v. *Texas,* 210 U. S., *supra,* en cuyo caso se explica y comenta la distinción que al parecer existe entre los casos de *Philadelphia Steamship Co.* v. *Pennsylvania,* 122 U. S., *supra,* y *Maine* v. *Grand Trunk Ry. Co.,* 142 U. S., *supra.* El Juez Asociado, Sr. Holmes, hablando a nombre del tribunal, dijo:

"Cualquiera que sea el nombre que se le dé a la contri-

bución si no es otra cosa más que una contribución corriente
sobre la propiedad o su equivalencia determinada por medio
de aquélla, no puede ser impugnada por el fundamento de
ser contraria a la constitución. *Postal Telegraph Cable Co.*
v. *Adams,* 155 U. S., 688–697. Véase el caso de *New York,
Lake Erie and Western R. R. Co.* v. *Pennsylvania,* 158 U. S.,
431, 438, 439. El punto es si esta contribución es de esa clase.
Tal vez de lo que se ha expuesto se ve claramente que noso-
tros debemos buscar una distinción positiva y no filosófica
o lógica. Al Estado le debe ser permitido imponer contri-
bución sobre la propiedad haciéndolo sobre su valor real como
si se tratara de un negocio activo. Por el contrario, el Es-
tado no puede imponer contribución sobre el comercio entre
Estados. Estos dos extremos difícilmente permiten una re-
conciliación lógica y absoluta y, sin embargo, tal distinción
no carece de fundamento. Cuando una legislatura únicamente
trata de tasar la propiedad no tiene tantas probabilidades de
caer en el error de una reglamentación perjudicial, como si
tratara directamente de los ingresos procedentes del comer-
cio entre Estados. Estudiando todo el sistema contributivo
en conjunto puede llegarse a trazar una línea divisoria posi-
tiva. Eso debe hacer este tribunal como mejor pueda.''

Tal vez sea éste el nervio de la cuestión. El Juez Holmes
no hace distinción entre los conceptos contribución sobre la
propiedad o contribución sobre una ocupación, cuando el fin
primordial del Estado es imponer contribución a sus ciuda-
danos sin favores ni distinciones.

Pueden citarse otros casos en los cuales se ha declarado
válida la imposición de una contribución sobre el ejercicio
de una industria que por su índole tiene el carácter de ser
entre Estados. *Ficklen* v. *Shelby County,* 145 U. S., 1; *Ameri-
can Harrow Co.* v. *Shaffer,* 68 Fed., 750; *State of Maryland*
v. *Applegarth,* 12 L. R. A., 812, y véase la nota al pie del caso
del *Pueblo* v. *Wemple,* 27 Am. State Rep., 562, en el cual se
expresan las distinciones existentes entre los distintos casos.

Otra decisión que enfáticamente establece la doctrina a fa-

vor del derecho de un Estado para imponer contribuciones es la emitida en el caso de *Pennsylvania R. R. Co.* v. *Knight,* 192 U. S., 21, en la cual resolvió el tribunal, que una empresa de coches de la Pennsylvania Railroad Co. dedicada al transporte de pasajeros desde su estación terminal en la ciudad de New York, por cuyo servicio se cobra una cantidad distinta de la que se cobra por otra clase de transportes, y cuyo servicio era exclusivamente dentro del Estado de New York, no tenía el carácter de comercio entre Estados a pesar de que todos los pasajeros que hacían uso de dichos coches de acuerdo con los estatutos de la compañía, eran personas que seguían viaje para el Estado de New Jersey o venían del mismo utilizando los vaporcitos de la compañía; resolvió, además, que dicha empresa de coches estaba sujeta a la inspección del Estado de New York y que dicha compañía de ferrocarriles no estaba exenta por el mero hecho de dedicarse al comercio entre Estados, de pagar la contribución impuesta por el Estado por dedicarse al negocio de empresa de coches de alquiler entre puntos radicados dentro del Estado.

Del examen de estos casos es evidente que si un Estado impone una contribución sobre todas las ocupaciones de determinada clase que existen dentro del Estado, una corporación cualquiera no puede eludir el pago de la contribución alegando para ello el estar dedicada al comercio entre Estados, al menos que demuestre que la ley que impone dicha contribución grava de un manera especial y peculiar o restringe el comercio entre Estados. En los casos citados, el Estado no ha impuesto la contribución por el hecho de estar el contribuyente dedicado al comercio entre Estados, sino por residir dentro del territorio o jurisdicción del Estado; y sobre este punto véase el caso de *Pullman's Palace Car Co.* v. *Pennsylvania,* 141 U. S., 18. El hecho en sí solo de estar dedicada al comercio entre Estados una corporación del país, no es suficiente para eximirla del pago de contribuciones si no se establece distinción alguna contra ella. Es necesario que concurra algún otro elemento además de la mera imposición de

la contribución.    Un fabricante dueño de una factoría en Kansas City, Missouri, que se dedicaba a vender en Kansas y otra factoría situada al otro lado de la línea divisoria en Kansas City, Kansas, que vendía en Missouri, no pudo evitar el pago de la contribución sobre la industria en ambos Estados por la razón de estar dedicado al comercio entre Estados. Algunas veces, de los casos resueltos no se desprende claramente la doctrina favorable al derecho del Estado de imponer contribuciones sobre las ocupaciones, pero las excepciones definen la regla.    Las leyes declaradas inconstitucionales constituyen claramente la excepción.

El caso de *Norfolk, etc., R. R. Co.* v. *Pennsylvania,* 136 U. S., 114, citado por la parte apelada, era un caso en el cual se trataba de una contribución impuesta a una compañía de ferrocarriles extranjera que servía de enlace a varios ferrocarriles y cuya contribución se impuso por el privilegio de tener oficina en el Estado de Pennsylvania.    La ley se dirigía contra corporaciones extranjeras.

El caso de Daniel Ball, 10 Wall., 557, era un caso en el cual se le exigió a un barco que obtuviera una licencia antes de poder navegar por las aguas navegables de los Estados Unidos.    Allí no se discutió la cuestión de imposición de contribución al barco ni a la propiedad ni a la ocupación, como en el caso de autos.    Dicho caso fué explicado en el de *Pennsylvania R. R. Co.* v. *Knight,* 192 U. S., *supra,* pág. 27.

En el caso de *Moran* v. *New Orleans,* 112 U. S., 74, que ya hemos citado anteriormente, la contribución que se discutía era para gozar del privilegio de navegar por aguas de los Estados Unidos, o sea por el río Mississippi y la ley le prohibía al dueño del barco que navegara hasta que hubiera pagado la contribución.

En el caso de *Gloucester Ferry Company* v. *Pennsylvania,* 114 U. S., 196, la corporación de New Jersey no tenía negocios ni bienes en Pennsylvania, excepto el negocio de conducción de carga y pasajeros en vaporcitos al muelle de Gloucester, New Jersey.

En todos estos casos que ha citado la parte apelada la contribución u ordenanza impugnada se imponía al barco o al negocio entre Estados como tal.   No se trataba de imponer a una empresa local las cargas corrientes de contribución.

Es verdad que en el caso de *Foster et al.* v. *Davenport,* 63 U. S., 244, se resolvió que el negocio de anconaje o de remolque constituía una continuación del viaje·de los barcos, a los cuales se les ayudaba a llegar en esa forma a su puerto de destino.   Pero también en ese caso la ley de Alabama exigía a los dueños de vapores que navegaban en las aguas del Estado, que antes de que salieran del puerto de Mobile presentaran una manifestación escrita expresado el nombre del barco, el nombre de su dueño y otros requisitos semejantes y se les imponía un castigo por la infracción de dicha ley, y la Corte Suprema de los Estados Unidos decidió, que esa ley estaba en pugna con la ley del Congreso, en cuanto la ley del Estado incluía en sus términos barcos que ya estaban provistos de licencias y debidamente matriculados al amparo de la ley del Congreso relativa a la navegación de cabotaje.   La ordenanza impugnada no se refería a barcos dedicados al servicio dentro del Estado, sino que abarcaba todo barco que entrara en el puerto y ·le exigía que se inscribiera.   Al barco en cuestión le era además necesario, para que rindiera su viaje dentro de la había de Mobile, otro barco.   Todos los lanchones en cuestión eran barcos dedicados a la navegación o cabotaje debidamente matriculados y con licencia.   Ese caso no tiene aplicación a la imposición de una contribución sobre el negocio de anconaje efectuado dentro de la jurisdicción de Puerto Rico y sin hacer distinción alguna.   En ese caso no se discutió cuestión alguna de contribución y la ley de Alabama constituía una infracción de una ley determinada del Congreso.   Además, este caso queda explicado por la doctrina sentada en el caso de Knight ya citado.

La parte apelada hace también hincapié en el caso de *Leloup* v. *Mobile,* 127 U. S., 640, citado anteriormente, para comprobar que aun en el caso de que los lanchones se dedi-

quen al comercio local, como también al comercio entre Estados, están exentos del pago de contribución local por concepto de patentes. La parte realmente interesada en este caso era "The Western Union Telegraph Co." y la corte resolvió que el Estado de Alabama no podía exigirle a Leloup, agente de la compañía de telégrafos, que sacara una licencia como requisito previo para dedicarse a ese negocio. El caso cae dentro del precepto general o de la excepción según el caso, tal como ha sido sentado o explicado por el Juez Asociado Sr. White en el caso de la *American Steel and Wire Co.* v. *Speed,* 122 U. S., 500, y también en el caso de *Bacon* v. *Illinois,* 227 U. S., 504. Además la "Western Union Telegraph Co." era una corporación incorporada bajo las leyes del Estado de New York. No se hace indicación alguna en ese caso ni en ningún otro de los que hemos examinado, en el sentido de eximir a una corporación de carácter local de contribuir en la parte proporcional que le corresponde en las contribuciones al igual que otras dedicadas al mismo negocio.

(*e*) La parte apelada sostiene en cuanto a la cuestión del impuesto de tonelaje, que los casos citados por esta corte en su primera opinión, apoyan la teoría de que no se puede imponer contribución por tonelaje por entrar, traficar o permanecer en el puerto. Es evidente de los casos citados y de otros, que la idea fundamental es de que la contribución se imponga por un soberano a los barcos de otro por el hecho de dedicarse a negocios dentro de sus puertos o bahías. Ha sido admitido el que las contribuciones por concepto de muellaje pueden ser impuestas por tonelada y, sin embargo, no constituir una contribución de tonelaje. De la misma manera, un Estado puede reglamentar determinado negocio y exigir que contribuya a los gastos del Estado y determinar el derecho a imponer la contribución tomando por base el tonelaje o cualquier otro medio conveniente. Si se permite imponer contribución de muellaje a los barcos extranjeros tomando por base el tonelaje, indudablemente, del mismo modo, en compensación por la protección que dispensa a sus ciudadanos

y a las corporaciones domiciliadas dentro del Estado, puede éste imponer una contribución a tales ciudadanos. Nos referiremos en particular a lo dicho en el caso de *Transportation v. Parkersburg,* 107 U. S., 698. "El hecho de que el tipo de la contribución sea impuesto y determinado por el tamaño o tonelaje de los barcos, no tiene significación alguna en este sentido." Esta es una contribución sobre un negocio o bienes dentro de Puerto Rico y no una contribución de tonelaje, pues para que tenga este carácter es necesario que se imponga por el privilegio de usar el puerto. Además, estas contribuciones no están calculadas por el tonelaje.

La Legislatura de Puerto Rico dió el derecho al municipio de imponer hasta $10 por cada ancón, pero también le dió la facultad de clasificar los ancones en tres clases. Pudo haberse impuesto la contribución por razón del tamaño y el hecho de que se le impusiera a los ancones bajo la base anterior por exceder de cierto tonelaje, sin que la contribución pudiera exceder de $10, no constituye una contribución de tonelaje. Tal contribución no se imponía a los barcos extranjeros y tampoco fué fijada en proporción al peso o medida de la embarcación. Los casos siguientes son también aplicables a éste: *Inman Steamship Co.* v. *Tinker,* 94 U. S., 243; *Packet Co.* v. *Keokuk,* 95 U. S., 80; Words and Phrases, vol. 8, pág. 6998, 7 Cyc.; 643; *Machine Co.* v. *Gage,* 100 U. S., 677; *Packet Co.* v. *Catlettsburg,* 105 U. S., 559.

(*f*) En nuestra opinión original hicimos referencia al hecho de que para poder revocar nuestra sentencia era indispensable resolver si el comercio que aquí se discute es realmente entre Estados o nó. La duda consistía en si Puerto Rico, siendo un soberano o cuasi-soberano creado por los Estados Unidos con poderes derivados directamente de los Estados Unidos, era distinto de los Estados Unidos dentro del espíritu del artículo del comercio entre Estados, pero como este caso queda resuelto por otros fundamentos y como Puerto Rico puede ser considerado como un Estado para los

efectos de la ley del comercio entre Estados, creemos inne-
cesario discutir más esta cuestión.

(*g*)   No creemos que la ley aprobada en la sesión extra-
ordinaria del 14 de julio de 1906, leyes de 1907, páginas 64
y 66, titulada "Ley para reglamentar el servicio de muelles
y puertos de Puerto Rico," derogara las disposiciones de la
ley de marzo de 1906 autorizando a los municipios para impo-
ner contribuciones a los ancones.   La contribución en este
caso ha sido impuesta por la Isla a los ancones.   No se tras-
luce intención alguna en esta ley de derogar la facultad de
los municipios para imponer contribuciones por industrias
a sus ciudadanos.   Las derogaciones tácitas no son favore-
cidas.

(*h*)   La parte apelada nos llama la atención hacia el hecho
de que en la Ley Foraker no hay precepto alguno que expre-
samente autorice la imposición de contribuciones sobre indus-
trias u ocupaciones.   Pero tampoco hay limitación alguna.
El artículo 38 establece que pueden imponerse contribuciones
a la propiedad y prohíbe ciertas contribuciones y no se puede
deducir de una manera ligera que el poder para imponer con-
tribuciones haya sido limitado, cuando el Congreso en varios
artículos de dicha ley ha dado poderes legislativos y guber-
namentales a Puerto Rico.   Además, la facultad de imponer
contribuciones a la industria u ocupación existía en los muni-
cipios antes de la implantación de la Ley Foraker y fué conti-
nuada por las órdenes militares y posteriormente por la
misma Ley Foraker al declarar que continuaban en vigor
las leyes y órdenes vigentes entonces.

(*i*)   Para reasumir.   La ley de marzo de 1906 concedió
a los municipios el derecho de imponer contribuciones a deter-
minadas industrias, o sea a ancones según el caso.   No cons-
tituye tal contribución un impuesto de tonelaje por las varias
razones que hemos aducido, sino una fijación de las tres clases
mencionadas en dicha ley.   El municipio puede haber im-
puesto una contribución uniforme de $10 sobre cada clase de
ancón y como lo más incluye lo menos, no podemos decir que

se tratara de imponer contribución por tonelaje. La contribución tal como fué autorizada por la legislatura recaía sobre todos los ancones dentro de los puertos o bahías de Puerto Rico y no excedería de $10 por ancón. No se estableció distinción por la legislatura con respecto a ancones de distintas clases o grados, ni es injusto ni desigual el que la legislatura haya delegado la facultad de subdividir la contribución en tres grados.

Esta contribución, ya sea considerada como una contribución específica sobre los ancones o sobre el negocio de anconaje, actuó igualmente en toda la isla y en todos los puertos y bahías que están bajo el dominio de El Pueblo de Puerto Rico y sus respectivos municipios y sobre todos los ancones en Puerto Rico dedicados a toda clase de negocio. Estos ancones no solamente se dedican a la descarga de barcos extranjeros o al comercio entre Estados, sino que también se usan en el comercio interior. En la bahía de San Juan, por ejemplo, los ancones se usan para el transporte de carga y pasajeros desde la playa a los barcos y también se usan para conducir carga de playa a playa. La fruta, la sal y otros productos se transportan en ancones.

Considerando que la parte apelada está dedicada exclusivamente al comercio entre Estados, no puede pretender eximirse del pago de su parte proporcional de la carga de contribuciones que indistintamente recae sobre todos los ancones existentes en los puertos y bahías de Puerto Rico. Sin embargo, como hemos visto y como lo demuestra el párrafo 4°. de la demanda, la "Ponce Lighter Company" no puede considerarse que esté dedicada exclusivamente al comercio entre Estados. Los barcos de la "New York and Porto Rico Steamship Co." rinden su viaje en los distintos puertos de Puerto Rico y, por lo tanto, no es necesario nada más para que quede completo el viaje, pero de cualquier modo que sea, no hemos podido ver ningún caso ni regla de equidad ni de igualdad que nos induzca a creer que la contribución de que se trata en este caso, constituye en modo alguno un

gravamen sobre el comercio entre Estados. Por su naturaleza es, o una contribución sobre bienes de ciudadanos de Puerto Rico o sobre sus industrias y como hemos visto, tanto los bienes como la industria u ocupación pueden ser objeto de contribución si así lo exige la legislatura.

La sentencia debe ser revocada.

*Denegada la reconsideración.*

Jueces concurrentes: Sres. Presidente Hernández y Asociados MacLeary, del Toro y Aldrey.